## MOSBY v. MANHATTAN OIL CO. *
### No. 9052.

Circuit Court of Appeals, Eighth Circuit.
Aug. 10, 1931.

Rehearing Denied Oct. 2, 1931.

Byron Spencer, of Kansas City, Mo. (H. M. Langworthy, Frank H. Terrell, Scott W. Bovey and Robert G. Merrick, all of Kansas City, Mo., on the brief), for appellant.

Henry L. Jost, of Kansas City, Mo., for appellees.

H. H. Booth, of Kansas City, Mo., for appellees Manhattan Oil Co. and Phillips Petroleum Co.

*Certiorari denied 52 S. Ct. 131.

R. E. Cullison and C. C. Julien, both of Bartlesville, Okl., for appellee Empire Gas & Fuel Co.

Before KENYON and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in favor of defendants after demurrers to plaintiff's evidence had been sustained and verdict had been directed in favor of defendants.

The action was one for damages claimed to have resulted from a nuisance alleged to have been created and maintained by defendants.

The second amended complaint alleged the following facts in substance: Plaintiff is the owner of a large ranch in Greenwood county, Kan., and is engaged in raising and fattening cattle thereon. The ranch is traversed by a stream known as the West branch of the Fall river, which is the only source of water supply for said cattle. During the spring and summer of 1926, plaintiff placed a large number of cattle upon said ranch for the purpose of raising and fattening them. During said time, defendants were drilling for and producing oil on land adjacent to the east of said ranch and on a small portion of said ranch. The land on which the drilling operations were carried on was higher than plaintiff's ranch and drained onto and over the same and into the stream which traversed plaintiff's ranch. Defendants concurrently and continuously in the spring and summer of 1926, in drilling for and producing oil, as stated, permitted large quantities of salt water and crude oil to escape from wells, pumps, and collection pools into said stream, and the said salt water and oil was carried down said stream and through and upon plaintiff's ranch, and accumulated in depressions on said ranch, and spread over said ranch, and made said ranch unfit for stock-raising, and deprived plaintiff of the proper use of his ranch—all to his damage. Plaintiff learned of the pollution of the stream about June 25, 1926. Cattle will not fatten when the water supply is polluted in the manner and to the extent that said stream was polluted. Owing to said pollution of said stream, the cattle on plaintiff's ranch did not fatten as they otherwise would have done, all to plaintiff's damage. Plaintiff was put to added expense in trying to furnish food and proper drink for said cattle. Defendants acted knowingly and in wanton disregard of plaintiff's rights in permitting said salt water and crude oil to escape into said stream and to be carried down said stream and through and upon plaintiff's ranch.

On the trial there was evidence tending to prove the ownership of the ranch and cattle thereon by plaintiff, the drilling operations for oil by defendants, the escape of salt water and crude oil in connection with said drilling operations into said stream and down the same through plaintiff's ranch, and damages suffered by plaintiff by reason of the pollution of the stream. There was no proof of concert of action between the several defendants in permitting the escape of salt water and oil from their respective plants, but the evidence tended to prove that, although the three defendants were conducting their oil operations separately, each independently of the others, they all concurrently permitted salt water and crude oil to escape from the places where they were conducting their operations and enter the stream which flowed through plaintiff's ranch, at a point or points immediately above or just below the place where the stream enters the plaintiff's ranch. The evidence further tended to prove that the salt water and refuse crude oil, so permitted to escape from the places of the operations of the three defendants, subsequently became diffused with the water of the stream, causing its pollution, so that it became unfit and unhealthful for the cattle to drink.

One of the grounds of the motions by defendants for a directed verdict was as follows: "Because it appears from the petition, and from the evidence, that there is a misjoinder of parties and of causes of action herein, and that if plaintiff has any cause of action against this defendant (which defendant does not concede but to the contrary denies) plaintiff is obliged under the law to pursue such remedy in a separate action and suit against this defendant."

It was upon this ground that the trial court granted motions for an instructed verdict.

In an opinion [1] accompanying the granting of the motions, the court said:

"*  *  * 'Where the injury is the result of the concurring negligence of two or more parties, plaintiff, at his election, may sue such parties either severally or jointly.' That general statement of the law is supported by numerous decisions in Missouri. *  *  *

"It is necessary that the injury be the result of the concurring negligence of the

[1] Oral opinion.

several persons sued before they can be jointly sued. The word 'concurring' and the word 'concurrent' are extraordinarily important words in this connection. They describe an element that must be present before tort feasors acting separately may be joined in one action. In my statement of the facts of this case, I should have said that the evidence is that each of these several oil companies was acting independently of the other two in the matter of drilling for oil and disposing of salt water.

"Now, what·is meant by the word 'concurrent'? * * * Certainly it is not meant by the word 'concurrently' that an act is done concurrently or that acts are done concurrently by two persons merely because they are simultaneous in point of time. Certainly it is not meant by the word 'concurrently' that two acts are done concurrently because the· result of the two acts in turn produce a certain ultimate consequence. * * * The negligence of the several parties concerned must either be the result of concerted action, joint action, or it must unite to cause one injury—a single injury—the injury complained of, before the law is satisfied, which demands that the negligence must be concurrent—if different persons acting independently are to be joined in one suit. * * *

"Now, in this case there is evidence tending to show that each of these defendants independently of the other caused to be thrown into the plaintiff's stream, salt water. · My view is that each of them inflicted upon the plaintiff a separate and distinct injury. It was a wrong against the plaintiff for any person to negligently throw salt water into the stream. When the salt water was thrown into the stream the injury was done; the wrong was committed then. Damages were something that might follow thereafter. That was the injury. Each of them acting independently of the other has inflicted a separate and distinct injury upon the plaintiff. Their acts did not concur in causing plaintiff's injury. The fact that the damage which he ultimately suffered may have resulted from the combined effect of the several and distinct injuries inflicted on him by the defendants does not render their acts concurrent, as I understand the law, and as I understand the meaning of the word 'concurrent.' * * *

·"The rule may be otherwise, and it is said that it is otherwise in Kansas. * * * But I am satisfied that this question must be determined by the law of the forum and not by the law of Kansas. A matter concerning the remedy and not the right is to be determined here by the law of Missouri as that law is declared by the Supreme Court of Missouri. I think the plaintiff has not proved in this case that these independent acts of negligence separately committed by the several defendants, were concurrent acts of negligence."

The first main question which arises is whether the present suit could be maintained in the courts of the state of Kansas. The leading Kansas cases follow:

Kansas City v. Slangstrom, 53 Kan. 431, 36 P. 706. The city diverted a stream and made an embankment below Slangstrom's property, and then made a sewer through the embankment. The sewer was too small. The Orchard Place Land Company thereafter extended the sewer through its land. The latter part broke down. Plaintiff's land was flooded. Plaintiff sued the city and the company, and charged that the combined wrongdoing of defendants caused the injury. Held, "as· the acts of either one would ·have occasioned injury, ·and as both contributed in obstructing the stream, a joint liability arises. * * * The fact that they did not act at the same time and upon the same part of. the obstruction is immaterial, when it appears that the wrongdoing was concurrent and combined in producing the injury."

Arnold v. Milling Co., 86 Kan. 12, 119 P. 373, 374. Action was brought by Arnold against the milling company, railway company, et al., for damages caused by defendants obstructing the flow of a river. The complaint alleged the milling company and other defendants had obstructed the flow by a dam; that the railway company, in building a bridge, had constructed an embankment which operated to dam the river; that these acts and these obstructions, operating jointly and contemporaneously, caused the river to overflow, to the damage of plaintiff. On motion, plaintiff was ordered to state his cause of action against the railway company and against other defendants separately. Plaintiff refused. The action was dismissed. Held error. The court said: "The averments, in effect, are that the misfeasances charged against each operated jointly and· contemporaneously in producing the overflow." It is to be noted that there was no concert of action; but that the combined acts of the defendants produced the results.

Luengene v. Power Co., 86 Kan. 866, 122 P. 1032. This was an action for damages for personal injuries caused by explosion of gas in the basement of a building; the negligence alleged was in failing to keep

pipes in proper condition. The answer of the company alleged that the city had so laid a water main that it rested upon a gas main and caused it to leak. Held, that the company was not absolved even if the answer was true; that, if the two causes operated together and caused the explosion, the company was liable.

McDaniel v. City of Cherryvale, 91 Kan. 40; 136 P. 899, 50 L. R. A. (N. S.) 388. This was an action to recover damages caused to plaintiff's land by the pollution of Drum creek which ran through it. The complaint alleged that in 1905 the city constructed sewers which emptied into the creek; also that the Uncle Sam Oil Company in the same year built a refinery which discharged oils, acids, etc., into the creek; that defendants concurrently discharged sewage, etc., into the creek, and that the pollution depreciated the value of plaintiff's land. There was a verdict for plaintiff. The appellate court said: "It is first contended that there was an improper joinder of causes of action against the defendants and that the plaintiff failed to set forth a joint liability against both defendants. The petition charged both defendants with wrongfully polluting the stream and that it was done by their concurrent action. This averment brings the case within the rule which has been applied in this state, that if two or more persons by their concurrent wrongdoing cause injury to a third they are jointly and severally liable and the injured party may, at his option, institute an action and recover against one or all of those contributing to the injury. (Kansas City v. Slangstrom, 53 Kan. 431, 36 P. 706; Arnold v. Milling Co., 86 Kan. 12, 119 P. 373; Luengene v. Power Co., 86 Kan. 866, 122 P. 1032.)" But the court held, further, that the action was barred by the statute of limitations.

See, also, Arnold v. Milling Co., 93 Kan. 54, 143 P. 413.

The view of the Kansas courts as to what constitutes concurrent wrongdoing is not without the support of high authority.

Shearman & Redfield on Negligence (6th Ed.) § 122, defines concurrent negligence as follows: "Concurrent, as distinguished from joint negligence, arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or co-operates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial." See, also, Sussex Land & Live Stock Co. v. Midwest Ref. Co. (D. C.) 276 F. 932, affirmed 294 F. 597 (C. C. A. 8).

From the rulings in the foregoing Kansas cases, we think it must be held that the present action could be maintained by plaintiff against the defendants jointly in the courts of Kansas. This was apparently the view of the trial court.

█ While the holding of the Kansas cases receives support in several other jurisdictions, it is opposed to the great weight of authority. See 35 A. L. R. 409, 412, note; 9 A. L. R. 939, 947, note; 40 L. R. A. (N. S.) 102, note. However, we do not deem the question involved to be one of general law to be determined by us independently of state decisions.

█ But the contention of the defendants is, and this contention was sustained by the trial court, that on this question of misjoinder the law of the forum governs. It is conceded that by the law of the forum (Missouri), the action, in view of the evidence, could not be maintained in Missouri against the defendants jointly. Benson v. City of St. Louis (Mo. Sup.) 219 S. W. 575; Martinowsky v. City of Hannibal, 35 Mo. App. 70, are cited and are in point. The correctness of the ruling that the law of Missouri governs is challenged, and raises the main question on this appeal. The answer to the question depends upon whether the matter involved is one of substantive law or procedural law. It is to be noted that, under the Kansas cases, recovery may be had against each defendant for the full amount of the damages suffered; whereas under the Missouri cases recovery may be had against each defendant only to the extent of the injuries inflicted by his own wrong. We think the difference is more than a procedural one; it goes to the extent or scope of the cause of action. The measure of the damages which plaintiff has sustained may be the same in Missouri as in Kansas; but the extent of the liability of each defendant is quite different in the two states. We think the difference is one of substantive right.

In Minor on Conflict of Laws, § 194, it is stated: "The law of the situs of a tort is of course the 'proper law' to govern the liabilities and rights arising therefrom. If not liable by the lex loci delicti, the general rule is that the defendant will not be liable else-

where. If liable by that law, he will usually be held liable, wherever the question arises to the same extent as if he were sued in the locus delicti itself."

Further, in section 196: "It is a general rule subject to but few exceptions that the lex loci delicti governs the right of an injured party to sue for a tort, the liability of the perpetrator, and the defenses he may plead."

Also, in section 197: "Not only does the lex loci delicti control the plaintiff's right to sue and the grounds of his complaint, but the same law usually governs the defenses which may be made, by the defendant."

In Slater v. Mexican National R. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900, damages were sought to be recovered for the death of one Slater, an employee of the company. The action was brought in the United States court in Texas, and the cause of action was based upon certain statutes of Mexico. The court in its opinion said (page 126 of 194 U. S., 24 S. Ct. 581, 582): "But when such a liability is enforced in a jurisdiction foreign to the place of the wrongful act, obviously that does not mean that the act in any degree is subject to the lex fori, with regard to either its quality or its consequences. On the other hand, it equally little means that the law of the place of the act is operative outside its own territory. The theory of the foreign suit is that, although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, an obligatio, which, like other obligations, follows the person, and may be enforced wherever the person may be found. Stout v. Wood, 1 Blackf. (Ind.) 71; Dennick v. Railroad Co., 103 U. S. 11, 18, 26 L. Ed. 439, 442. But as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation (Smith v. Condry, 1 How. 28, 11 L. Ed. 35), but equally determines its extent. * * * Therefore we may lay on one side as quite inadmissible the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught."

Northern Pac. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 980, 38 L. Ed. 958, was an action for damages for death by wrongful act. The accident occurred in Montana, but the action was brought in Minnesota.

The statute of Minnesota fixed a maximum sum for recovery in cases of this character. The Montana statute provided that "such damages may be given as under all the circumstances of the case may be just." It was held that the statute of Montana governed.

To the same effect, see Dexter v. Edmands (C. C.) 89 F. 467.

It is a well-settled rule that the courts of one state will enforce substantive rights existing under the laws of another state, if not contrary to the public policy of the forum state. See 73 A. L. R. 897 note. The courts of Missouri recognize and act upon the rule. St. Joseph Fire & Marine Ins. Co. v. Leland, 90 Mo. 177, 2 S. W. 431, 59 Am. Rep. 9; Taylor v. Integrity Mut. Casualty Co., 216 Mo. App. 599, 265 S. W. 881; Rev. St. Mo. 1919, § 1162.

The mere fact that the law of Missouri differs from the law of Kansas does not make the law of Kansas contrary to the public policy of Missouri.

In Herrick v. Minneapolis & St. Louis Ry. Co., 31 Minn. 11, page 14, 16 N. W. 413, 414, 47 Am. Rep. 771, the court stated the rule as follows: "But it by no means follows that because the statute of one state differs from the law of another state, that therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens."

The rule thus stated is approved by the Supreme Court in Northern Pac. R. Co. v. Babcock, supra.

Our conclusion on this branch of the case is that the evidence disclosed an accrued cause of action, under the law of Kansas, against the defendants jointly, and that such cause of action was maintainable in the federal court in Missouri.

Two other grounds of the motions by defendants for a directed verdict were specifically presented to the trial court, and,

though not passed upon by that court, are yet properly urged here in support of the judgment. Whitney v. New York, etc., R. Co. (C. C. A.) 102 F. 850, 50 L. R. A. 615; Currier v. Trustees (C. C. A.) 117 F. 44; Latting v. Owasso Mfg. Co., 148 F. 369 (C. C. A. 8); Joslyn v. Cadillac Auto Co. (C. C. A.) 177 F. 863. See Bank of Havelock v. Western Un. Tel. Co., 141 F. 522, 526, 4 L. R. A. (N. S.) 181, 5 Ann. Cas. 515 (C. C. A. 8); Thorn v. Browne, 257 F. 519, 527 (C. C. A. 8).

As to one of these grounds, the contentions of defendants are that there can be no recovery in the present action against any of the defendants because one of the defendants was a lessee of plaintiff, that the acts of such lessee are imputable to plaintiff, and that there was no segregation of the damages caused by such lessee.

We think this contention cannot be sustained. One of the implied obligations of a lessee is that he shall so use the leased premises as not to injure his lessor by a nuisance thereon. The contractual relationship between lessor and lessee does not preclude an action for tort. 36 C. J. 84, § 710; Fogarty v. Junction City Pressed Brick Co., 50 Kan. 478, 31 P. 1052, 18 L. R. A. 756; Lawer v. Mitts, 33 Wyo. 249, 238 P. 654.

█ Another contention is that the salt water from the wells and places of operation of plaintiff's lessee ran or drained for a considerable distance on plaintiff's land before entering the waters of the river, and that plaintiff's cattle may have drunk such salt water before it entered the river, and that, if this were so, plaintiff's lessee alone would be liable for any resulting damage, and that the evidence has not allocated the damages between the several defendants.

There are several answers to this contention: First, the evidence as to the topography of the land and as to the character of the soil between the lessee's base of operations and the river renders such a contention highly improbable; second, there is no evidence that plaintiff's cattle drank the water seeping or flowing from the lessee's places of operation to the river, but there is evidence that they drank from the river; third, the contention assumes such perversity on the part of the Kansas cattle that they deliberately and persistently chose to drink the more highly polluted water of the gully when they had access to the less polluted water of the river. We are unwilling to make this assumption.

Other contentions of defendants have been considered, but do not require discussion.

For the reasons above given, we hold that the court erred in directing a verdict and in entering judgment for the defendants.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.