### GOOD v. HARTFORD ACCIDENT & INDEMNITY CO. et al.
### C. A. No. 221.

District Court, W. D. South Carolina.
June 23, 1941.

Wilson & Wilson, of Rock Hill, S.C., and Hart & Moss, of York, S.C., for plaintiff.

Hemphill & Hemphill, of Chester, S.C., and Osborne, Butler & Moore, of Spartanburg, S.C., for defendants.

WYCHE, District Judge.

The above case was removed from the Court of Common Pleas of York County to this court by the petition of the non-resident defendants, Hartford Accident and Indemnity Company and Maryland Casualty Company, upon the grounds of separable controversy and fraudulent joinder. In due time the plaintiff filed his traverse to the removal petition and the matter first came before me upon motion of the non-resident defendants to strike and dismiss plaintiff's traverse to the petition upon certain grounds, which motion was denied for the reasons stated in an order by me dated April 29, 1941, in which order I directed that the issues of fact as to fraudulent joinder raised by the traverse to the petition be heard and determined by affidavits to be submitted by the parties. Affidavits were submitted, which I now have for consideration, together with the removal record, in determining the question of fraudulent joinder in connection with plaintiff's motion to remand.

There can be no doubt that in a civil action a plaintiff, who has in truth and in fact a reasonable basis for so doing, has the right to set forth and maintain in one cause of action as against two or more defendants, either jointly or concurrently liable, his claim for damages as against all, and that under such circumstances no defendant has a right to say that an action shall be separable which the plaintiff has elected to make joint, and cannot deprive the plaintiff of his right to prosecute his own suit to a final determination in his own way. On the other hand, it is equally clear that a civil action, at law or in equity, presenting a controversy between citizens of different states and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant if not a resident of the state in which the action is brought, and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. If, in such a case, a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion, apart from the pleader's deductions. If a removal is effected, the plaintiff may, by a motion to remand, plea, answer or traverse, take issue with the statements in the petition. If he does, the issues so arising must be determined by the District Court, and at the hearing, the petitioning defendant must take and carry the burden of proof. Wilson v. Republic Iron & Steel Company, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144.

Merely to traverse the allegations upon which the liability of the resident is rested or to apply the epithet "fraudulent" to the joinder will not suffice; the showing must be such as compels the conclusion that the joinder is without right and made in bad faith. Chesapeake & Ohio Railway Co. v. Cockrell, 1913, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544.

To make out a fraudulent joinder, as Judge Learned Hand has aptly written, the petitioner "must show more than that no relief can be granted against him [the resident defendant] in the state court; he must show that the plaintiff could not reasonably suppose that no such relief could be given". Hough v. Societe Electrique, D.C. N.Y.1916, 231 F. 341, 343. A comparatively recent decision from this State, in somewhat analogous language, states the rule thus: "If it be clear that legally the defendant who is a citizen of the same state as the plaintiff can be liable to the plaintiff on no reasonably legal ground on the cause of action set up in the complaint or declaration, and that the plaintiff knew or must be presumed to have known such to be the case, then the joinder as a codefendant of such citizen of the same state as plaintiff, the presence of which codefendant cannot be justified by any legal rule as to parties, so as that his presence as a defendant is explainable only by the joinder having been pretensively made so as to defeat a removal.

This would justify the inference that the joinder was a fraudulent one on the part of the plaintiff." Price v. Southern Power Co., D.C.S.C.1913, 206 F. 496, 499.

The rule thus deducible from these decisions is that fraudulent joinder can only be established by a showing that plaintiff could have "granted" unto him "no relief" against the resident defendant and that the resident defendant "can be liable to the plaintiff on no reasonably legal ground on the cause of action set up in the complaint or declaration."

The complaint in this action alleges that the defendants conspired, colluded and planned to take undue advantage of plaintiff's illness, and did, in consummation of such plans and conspiracy, abuse, ridicule, annoy, discourteously treat and subjected him to insult, indignities and abuse, for the purpose of causing the plaintiff to withdraw any claims he had against the insurance companies for benefits under accident policies issued by the non-resident defendants, from which the plaintiff alleges he suffered damages. Paragraphs 10 and 11 thereof are as follows:

"10. Plaintiff further alleges, upon information and belief, that by virtue of the terms of the aforesaid mentioned Policies of Insurance sold by the defendants to the plaintiff, and the defendants seeking to avoid the liabilities incurred under the terms of said Policies, began an investigation while said Policies were in full force and effect, seeking information for the purpose, if possible, of avoiding the payment to plaintiff of any sums due him under the terms of said Policies of Insurance.

"11. That while plaintiff was seriously ill and sick and confined to his home in the City of Rock Hill as a result thereof, and while under the care and supervision of his Physicians, the Agents of the defendants herein did among themselves conceive the idea, purpose and design of avoiding the payment to plaintiff of the substantial monetary benefits to which he was entitled under the terms of each of the aforesaid Policies, and with the wicked and malicious intent, collude, plan and conspire together to take undue advantage of plaintiff's weakness, illness and sickness, all of which said facts were well known to the defendants, their agents and servants, to annoy, harass, embarrass, worry, did come to the home of this plaintiff in the City of Rock Hill, on March 21, 1940, and acting principally through E. P. McGill and William Dawes, agents and servants of the defendants, and acting in pursuance of said conspiracy previously formed for the purposes aforesaid, did come to plaintiff's home, the plaintiff at such time being a very ill man, highly nervous, and physically unfit for the transaction of business, which said facts were well known to the defendants, their agents and servants, and the said agents, acting for the purposes aforesaid, did most vigorously abuse, ridicule, annoy, embarrass and discourteously treat this plaintiff, and subjected him to insult, indignities and abuse, and did use towards plaintiff abusive and insulting language, all for the wicked, willful and malicious purpose of embarrassing and humiliating the plaintiff who had a contractual relation with the defendants by reason of the aforesaid Policies, and for the purpose of causing plaintiff to withdraw any claim against the defendants under the terms of the aforesaid Policies; that such abuse of plaintiff continued for more than two hours, until the wife of plaintiff gave the defendants' agents a suggestion that they should leave plaintiff's home."

On the hearing before me it developed that E. P. McGill was a representative and agent of the defendant, Hartford Accident and Indemnity Company, and William Dawes was the representative and agent of the Maryland Casualty Company, and R. T. Fewell was the agent and representative of the Peoples Trust Company, and the said Peoples Trust Company was agent of its two co-defendants. It further appears from the pleadings and the affidavits submitted on the hearing before me, that the plaintiff had with the Hartford Accident and Indemnity Company an automobile accident policy, and with the defendant, Maryland Casualty Company, a disability policy, each of said policies providing for indemnity in case of loss caused by bodily injuries sustained through accident. It further appears that the plaintiff sustained injuries in an accident on December 5, 1938, and that thereafter he filed a claim with each of the insurance companies for certain benefits under the said policies, the said blanks upon which the claims were submitted being filled out by R. T. Fewell, Agent, of the Peoples Trust Company, the said Trust Company having sold and delivered each of said policies to the plaintiff, and that in the letter of R. T. Fewell forwarding the claim to the Hartford Accident and Indemnity Company, he directed particular attention to the fact that the plaintiff had similar insurance

with the Maryland Casualty Company, Travelers Protective Association and probably others. It is true that this appeared in the claim as filed, but R. T. Fewell directed particular attention to this part of the claim in his letter to the Hartford. It appears from plaintiff's affidavit that this information was evidently given by Hartford to Maryland Casualty; during the course of the conversation at his home Dawes asked plaintiff "If he did not have a policy in the T. P. A.", and McGill thereupon asked him "What had they done" and Dawes asked "If they had paid him" and Dawes thereafter admitted to plaintiff that his company, Maryland Casualty, had taken the matter up with Travelers. From this it can be concluded that the act of Fewell in notifying Hartford and of Hartford's and Maryland's actions, shows concert of action on the part of all of the defendants. It appears then that William Dawes, as a representative of Maryland Casualty Company, came to the home of plaintiff alone, and that thereafter E. P. McGill, as representative of Hartford Accident and Indemnity Company, came to the home of plaintiff alone, each of said representatives coming for the purpose of investigating the claim filed, and that on these occasions each conducted himself in a businesslike way and in a gentlemanly manner. It then appears that on March 21, 1940, William Dawes, agent as aforesaid, and E. P. McGill, agent as aforesaid, met in the office of R. T. Fewell and the Peoples Trust Company, in Rock Hill, South Carolina, and there had a discussion and conference with reference to the claims of plaintiff under the respective insurance policies. It then appears that R. T. Fewell, of the Peoples Trust Company, called the plaintiff over the telephone and advised him of the presence in Rock Hill of Dawes and McGill, and that they had left his office and were coming to his home to see him, and according to Fewell's affidavit that they were going to decline paying him anything on his claims. Mr. Good understood Mr. Fewell was making an engagement with him for Dawes and McGill to see him about the insurance claims. It appears that plaintiff lives only four blocks from the office of the Peoples Trust Company, and that each of the representatives of the insurance companies knew where the plaintiff lived, but that it was twenty to thirty minutes before they arrived at the home of plaintiff, traveling in one automobile. The delay in arriving at plaintiff's home, if these men left the office of the Peoples Trust Company, before

Fewell's conversation with plaintiff is not explained. It further appears from plaintiff's affidavit that he was sick and ill, and because of the telephone conversation he had with Mr. R. T. Fewell, that he got out of bed and dressed himself for the purpose of receiving Dawes and McGill, and that if he had known it was the intention of the agents to refuse payment of his claim or treat him in the manner alleged in the complaint, he would not have received them in his home or permitted them to discuss his claims with him.

It further appears from the plaintiff's affidavit that he believed Fewell, Dawes and McGill had had a conference with reference to his insurance claims, and that it was agreed that Dawes and McGill were to come to plaintiff's home with reference to the claims, and that Fewell was to make the engagement for their coming. The plaintiff understood from his conversation with Fewell over the telephone, and from his conversation with Dawes and McGill they were acting together in connection with plaintiff's insurance claims. It further appears, from the affidavit of Dr. W. E. Simpson, plaintiff's physician, that he visited plaintiff shortly after Dawes and McGill had been to his home, and found that these two men had been there for about two hours, and that as a result of the treatment accorded plaintiff, he suffered a serious back set, and that he found him in a highly nervous state, wet with perspiration and almost frantic; that as a result of this information, he went to the office of R. T. Fewell on the next morning to ascertain why he had sent these insurance representatives to plaintiff's home, and that he found McGill, one of the insurance men who had been at Mr. Good's home the previous day, in conference with R. T. Fewell; that he advised them of the effect of their presence and asked why Fewell had sent these representatives to plaintiff's home without his permission. The physician further inquired why it was necessary for these representatives to see Mr. Good, when he was a sick and ill man, when they had nothing to do except to refuse his claim, and what was the excuse for them staying with him and upbraiding him in the manner that they had. He further asked Mr. Fewell why he had sent these men down to plaintiff's residence. The record is silent as to any answer.

It appears from the affidavit of W. B. Wilson, of counsel for plaintiff, that he had conversation on two occasions with Fewell

480

in regard to the treatment the plaintiff had received on March 21, 1940, and Fewell admitted he had had a conference with McGill and Dawes with reference to plaintiff's insurance claims, just before he telephoned plaintiff that he was sending Dawes and McGill to his house to talk the matter over, and he admitted he knew when he sent them they were not going to accept and pay plaintiff's claims; that in a second conversation, Fewell was advised that the Peoples Trust Company had been made a party to this action, because Fewell, as its representative, knew the condition of plaintiff, and had made an engagement for Dawes and McGill and sent them to plaintiff's home. The affidavit of plaintiff's counsel further sets forth that he had investigated the case and was convinced that Fewell was cooperating with Dawes and McGill in their investigation of the claims filed by Mr. Good, and that knowing plaintiff's condition, Fewell had secured the conference for Dawes and McGill, so that they might come to his home in an effort to convince plaintiff he did not have any just claim against the insurance companies, and to prevent him from pressing same.

It also appears that Fewell by his affidavit seeks to justify his connection with plaintiff filing his insurance claims as being plaintiff's agent, and that he was acting for plaintiff. If this be true, then there was no necessity for the visit of Dawes and McGill to plaintiff's home, as they could have declined plaintiff's claims to his agent. However, it further appears that Fewell was the person who had sold and delivered the insurance policies to plaintiff and collected the premiums therefor, in behalf of the Peoples Trust Company, who was acting for its co-defendants. It also appears that the Peoples Trust Company had in its possession blanks of each of its co-defendants for the filing of claims, and that after a conference with plaintiff, Fewell had gone to the office of the Peoples Trust Company and obtained the necessary blanks for filing the claims.

It appears that the complaint and the affidavits submitted charge that Dawes and McGill entered into a conspiracy as representatives of their respective insurance companies, with the Peoples Trust Company. No affidavits of denial by these parties have been furnished by either of these agents as to participation in the conspiracy alleged, even though each of said parties was available to the petitioning defendants,

being employees and agent thereof. If no such arrangement or conspiracy in fact existed, Dawes and McGill could have made affidavits to this effect.

In deciding the issue of fraudulent joinder made in this case, I must take into consideration the fact that direct evidence of a conspiracy is ordinarily in the possession and control of the alleged conspirators, and seldom can be obtained, that the unlawful agreement is almost always entered into secretly, and a conspiracy is usually susceptible of no other proof than that of circumstantial evidence. It is a well-settled rule that proof by direct and positive evidence is not necessary in an action for conspiracy, and that circumstantial evidence, that is, evidence of the acts of the alleged conspirators, and of the circumstances surrounding the transaction, which is the basis of the charge, is admissible to prove the conspiracy alleged. The law permits great latitude in the admission of circumstantial evidence tending to prove a conspiracy, and to connect those advising, encouraging, aiding, abetting and ratifying the overt acts committed for the purpose of carrying into effect the objects of the conspiracy, I must consider every fact which has a bearing on any tendency to prove the ultimate fact in issue. The limits to which evidence of this kind may be admitted rest in the sound discretion of the trial court, and its ruling will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact. Subsequent acts from which the conspiracy may be inferred may be proved, but they must be such as to indicate a prior collusive combination and fraudulent purpose. 15 C.J.S., Conspiracy, § 29, pp. 1043–1045.

I may not pass upon the sufficiency of the allegations as upon demurrer, or upon the sufficiency of the testimony as in nonsuit, since I am limited solely to the question of jurisdiction. If it should be held by the State court that the allegations are not sufficient to sustain the charge of unlawful conspiracy against all defendants, or that the testimony is not sufficient to prove the cause of action against the resident defendant, it would be the prerogative of the State court to dismiss upon demurrer or grant a nonsuit, and not the prerogative of this court. Forrest v. Southern Railway Co., D.C., 20 F.Supp. 851. I am only concerned in deciding the following questions: Whether or not the plaintiff had any reasonable basis for joining the Trust Company,

resident defendant, as a party defendant in this action; have the removing defendants carried the burden of making a showing that compels the conclusion that the joinder is without right, and made in bad faith? Have they shown that the plaintiff could not reasonably suppose that no such relief could be given?

As federal jurisdiction cannot be conferred by consent of the parties, but is conferred by the statute, doubtful conclusions should not extend it. Elgin v. Marshall, 106 U.S. 578, 580, 1 S.Ct. 484, 27 L.Ed. 249. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. See Matthews v. Rodgers, 284 U.S. [521] at 525, 52 S.Ct. 217, 76 L.Ed. 447; compare Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249." Healy v. Ratta, 292 U.S. 263, at 270, 54 S.Ct. 700, at 703, 78 L.Ed. 1248.

With these principles of law as my guide applied to the acts of the alleged conspirators and the circumstances surrounding the transactions as disclosed by the affidavits and removal record, I cannot say that the removing defendants have carried the burden of making a showing that compels the conclusion that the joinder is without right and made in bad faith. I cannot say that the plaintiff, under the facts and circumstances surrounding the transaction, could not reasonably suppose that the relief asked could not be given, or that the plaintiff had no reasonable basis for joining the Trust Company, resident defendant, as a party defendant.

Nor, under the averments of the petition can it be maintained that a separable controversy is alleged? To entitle one to remove a cause as involving a separable controversy, the petitioner must show that the plaintiff has a separate cause of action against it and that two or more causes of action are united in the complaint. Hyde v. Ruble, 1881, 104 U.S. 407, 409, 26 L.Ed. 823, 824; Geer v. Mathieson Alkali Works, 1903, 190 U.S. 428, 23 S.Ct. 807, 47 L.Ed. 1122.

The present action is not, as removing petitioners contend, a proceeding ex contractu, but rather an action sounding in tort to recover damages resulting from an unlawful conspiracy.

A review of the complaint convinces me that the gist of the suit is an unlawful conspiracy.

In determining whether such action as here set up "is in contract or in tort", the court is to be governed "solely by the pleadings". 1 C.J. 1015, 1 C.J.S., Actions, § 46. And, in such connection, it is a familiar canon of construction that, "a construction of a pleading, is to be preferred, where reasonably possible, which will give effect to all of its material allegations." Flint & Walling Mfg. Co. v. Beckett, 1909, 167 Ind. 491, 79 N.E. 503, 507, 12 L.R.A., N.S., 924. In the words of a leading case, the court, in passing on such issue, must look to "the substance of the entire pleading". Ft. Smith & Western R. Co. v. Ford, 1912, 34 Okl. 575, 126 P. 745, 746, 41 L.R.A., N.S., 745. It not infrequently occurs that a complaint contains what one court has perhaps aptly characterized as "hermaphroditic allegations", but it will not do "to take words used in one part of the complaint, and, by separating them from the context and considering them without reference to the complaint as a whole, to draw from them an inference favorable to the defendant's theory, which is opposed to the one to be deduced from a reading of the whole complaint, and the one which the pleader evidently had in mind in framing it." Foote v. Ffoulke, 55 App.Div. 617, 67 N.Y.S. 368, 369.

Nor will the existence of a "contractual relationship between [parties] * * * preclude an action for tort." Mosby v. Manhattan Oil Co., 8 Cir., 1931, 52 F.2d 364, 369, 77 A.L.R. 1099. Truly, if it appears that a tort constitutes "the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of breach of a contract." 1 C.J. 1016, See also, 1 C.J.S., Actions, § 46. A leading case puts it: "The allegation by the plaintiff of contractual relations with the defendant does not necessarily make the action one upon contract, for these matters are often properly pleaded by way of inducement preliminary to an allegation of facts constituting a tort." Cowan v. Telegraph Co., 1904, 122 Iowa 379, 385, 98 N.W. 281, 283, 64 L.R.A. 545, 548, 101 Am.St.Rep. 268. Stated somewhat differently, the allegations as to a contract are frequently "purely incidental to the cause of action sued on" (Hampton v. Supreme Lodge, 1931, 161 S.C. 540, 543, 159 S.E. 923, 924;

482

Winthrop v. Allen, 1921, 116 S.C. 388, 392, 108 S.E. 153) and are referred to, "not for the purpose of 'founding a right to a recovery for the breach of the contract'" (Pickens v. Railroad Co., 1898, 54 S.C. 498, 502, 32 S.E. 567, 568), but merely "as an incident, though a necessary incident, to the commission of the fraud claimed to be charged". Rogers v. Virginia-Carolina Chemical Co., 3 Cir., 1906, 149 F. 1, 12; Attleboro Mfg. Co. v. Frankfort, etc., Ins. Co., C.C.Mass.1909, 171 F. 495.

If due regard be had to the structural essence of the immediate complaint and looking, as we must, to the substance of the entire pleading, it seems clear that the present proceeding is ex delicto.

It is true that the complaint does refer to contracts of insurance between the parties, but such reference is "not the purpose of founding a right to a recovery for the breach of that contract" but merely "as are incident" to the commission of the unlawful conspiracy charged. The reference to the contract is most casual and certainly the complaint does not purport to allege a cause of action or breach of such contract.

Without citing additional authorities, it is clear to me that there is no separable controversy here.

For the foregoing reasons, the motion to remand will be granted and counsel may present an appropriate order.