**BABB v. PAUL REVERE LIFE INS. CO., WORCESTER, MASS., et al.**

**Civ. A. No. 1215.**

United States District Court
W. D. South Carolina, Spartanburg Division.
Jan. 30, 1952.

248

E. W. Johnson, Spartanburg, S. C., for plaintiff.

T. Sam Means, Jr., Spartanburg, S. C., for defendants.

WYCHE, Chief Judge.

The above case is before me upon motion of the plaintiff to remand the case to the court of common pleas for Spartanburg County, from which court it was removed here, upon a petition alleging that there was a separate and independent claim or cause of action alleged in the complaint against the non-resident removing defendant.

The defendants appear to be sued jointly, but the complaint nowhere contains the customary words of damages, joint and concurrent, fraud and deceit or conspiracy on the part of the defendants as grounds for retaining jurisdiction in the state court. However, these expressions are merely conclusions of law and whether the case is removable as embracing a separate and independent claim is dependent on the facts alleged and not on the allegations of such conclusions, which, in the absence of specific facts, would still be insufficient.

The complaint in the designated first cause of action alleges the residence of the parties and that the resident defendants at the time mentioned in the complaint were agents of the non-resident defendant insurance company, the issuance of the contract of insurance, together with the riders thereon, and then says:

"9. That while the said 'Non-Cancellable Income Protector Policy' and its riders were in full force and effect, with all premiums paid, her husband became ill, was confined in a convalescent home and went regularly to a hospital in Augusta, Georgia, where, for a time, he received shock treatments; these being treatments given by electric shock applied to the temples of a patient and are given because of mental illness or disease.

"10. That because of the illness, hospitalization, treatments, doctors bills, loss of earnings and sickness, her husband became entitled to some or all of the benefits under the policy and, so she is informed, believes and alleges, on forms furnished by the company for this purpose, her husband duly filed claims for payment.

"11. That in or about the month of May 1948, so plaintiff is informed, believes and

alleges, the defendant insurance company, through the individual defendants, paid to her husband, Arthur C. Babb, the sum of about $638.00, the exact amount not being known to this plaintiff, and thereafter caused and induced her husband to surrender to the company the aforesaid Policy No. 399989 in the manner hereinafter set forth.

"12. That in May 1948, at the time the payment of about $638.00 was made under this policy or its riders, her husband was visited, in their home, by the defendant company's agents, Toby Holt and C. DuBose Boylston, who, while agreeing to pay her husband a claim or claims or parts thereof under this policy, represented to her husband that the policy was issued based on the insured's application therefor and in that application he had made a false statement, in that he had represented to the company that he had not had arthritis, when in fact he had had arthritis, and this, if known to the company would have kept it from ever issuing the Income Protector Non-Cancellable Health, Accident and Hospitalization Policy referred to herein, and because of his false representation, the policy was void and would have to be surrendered; but that they would pay the six hundred odd dollars if he surrendered the policy.

"13. That the representations made by the agents of the defendant company concerning her husband's claimed misstatement in his application, about not having had arthritis, induced her husband in his mentally and physically sick condition at the time, to surrender and to deliver to them this policy of insurance, and to accept a lesser amount for disability, income and hospital benefits than was actually due him at the time. Whereas, in truth and in fact, her husband had made no misstatement about not having had arthritis.

"14. That the defendants must have known from the nature of the claims filed by her husband and from the fact that he was taking shock treatments or by the exercise of reasonable inquiry thereabouts, if not from the actual conversations with her husband, that he was physically and especially mentally a sick man, too mentally ill,

confused and upset, nervous and highstrung to be able to grasp, understand and appreciate either the significance of what these agents were telling and representing to him about his policy or to know that he was doing in surrendering, and at the time delivering to them, his valuable and at that time in benefit contract of so-called 'Non-Cancellable Insurance.'

"15. That the defendants having induced her husband, while he was mentally ill, to surrender his valuable rights and his mental disability having continued thereafter for a period of time during which still other payments would have matured, the plaintiff is now entitled to an accounting from the defendant company and to have the policy re-instated and to have the purported surrender by the insured declared to be null, void and of no effect."

And, in the so-called second cause of action, the complaint repeats all allegations in the first cause of action, and then says:

"3. That under the instant policy, styled 'Income Protector Policy,' bearing Number 399989, in addition to the payments due her husband and which are now due to his estate, the policy provided, in substance, for the payment to the named beneficiary, the plaintiff herein, the sum of $7,500.00 in case of accidental death.

"4. That the claims for which her husband was entitled are as follows:

"(a) Complete disability from November 28, 1947 until October 1, 1948, a period of 11 months @ $150.00 per month .................. $1,650.00
"(b) Doctor's Bill in Augusta, Georgia ................. 200.00
"(c) Hospital bill in Augusta, Georgia, including 8 shock treatments @ $4.00 each... 206.00
"(d) Complete disability from January 2, 1950 until March 7, 1951, 13 months @ $150.00 ................. 1,950.00

Totaling, in the aggregate, $4,006.00, which sum, less the payment of about $638.00, is now due her husband's estate.

"5. That the plaintiff is now entitled to have paid to her the amount of the benefits

250

due her husband during his lifetime and to have the defendants pay to her the sum of $7,500.00 accidental death benefits, that sum being due her under said Policy Contract No. 399989; her husband having been accidentally killed on the 7th day of March, 1951, and proof of death having been furnished to the defendant company in the manner hereinabove set forth."

The prayer of the complaint is as follows: "Wherefore, the plaintiff prays, as to the First Cause of Action, that Policy Contract No. 399989 be declared in full force and effect, the purported surrender thereof by her husband be declared null and void, and she be given an accounting as to the payments made to her husband, the claims filed by him, etc., and, as to the Second Cause of Action, that she be given a judgment against the defendants for the amount of the hospital, doctors and loss of income benefits amounting to about $3,368.00, and the further sum of $7,500.00 accidental death benefits, and that she be awarded costs and granted any other just relief."

The complaint, while divided into so-called two causes of action, in my opinion, is, in fact only one cause of action. The allegations of the complaint may be considered to allege a joint cause of action against all the defendants for fraud and deceit in which all defendants participated throughout and for which all defendants are equally responsible. Although not stated in specific terms, the facts alleged show joint and concurrent participation by all of the defendants in all that was done. While the plaintiff does not use the word "damages" in her complaint or in the prayer for relief, she does allege what she suffered and the amount of the loss she suffered at the hands of the defendants by reason of the surrender and cancellation of the policy of insurance, and gives what may be considered an itemized statement of how the amount of the losses is arrived at. The complaint does not allege a cause of action for damages for breach of the insurance contract because there is no allegation in the complaint that the contract between plaintiff's husband and the insurance company had been breached by the defendant insurance company. On the contrary, the allegation is that it was surrendered and cancelled. When paragraphs 3, 4 and 5 of the so-called second cause of action are considered alone, it might be said that these allegations amount to an action against the insurance company for the amount due upon the policy of insurance, but when these allegations are considered along with the other allegations of the complaint, and when the complaint is construed as a whole, it is doubtful if it could be said that the complaint states a cause of action for the amount due by the defendant insurance company to the plaintiff upon the contract of insurance, or that when construed as a whole, that the complaint states a separate and independent claim or cause of action against the defendant insurance company.

◼ The federal courts have restricted rather than enlarged the classes of cases on which the right of removal can be exercised on the ground that there is a separable controversy. Since the passage of the Act of 1887, 28 U.S.C.A. § 1441 note, they have steadily sought to limit rather than extend their jurisdiction and the Congress of the United States has further restricted classes of cases in the recent amendment to the removal statute by saying that before removal can be had there must be stated a *separate and independent claim or cause of action.* In my opinion, even before the passage of the amendment to the removal statute, the court meant to hold, and did hold in the cases of Alabama Great Southern Ry. Co. v. Thompson, 200 U.S. 206, 212, 26 S.Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147, and Cincinnati, N. O. & T. P. Ry. Co. v. Bohon, 200 U.S. 221, 26 S.Ct. 166, 50 L.Ed. 448, that where the matters in controversy in a suit are by the practice in the State where the suit is filed regarded as suable in one action because relating to the same transaction or subject matter, and, therefore, presenting one primary controversy between the parties to it, such suit does not present a separable controversy as to any of them, although at common law the cause of action would have been severable and not joint. 1 C.J. pages 1073, 1074

and 1082, § 239 et seq.; 1 C.J.S., Actions, §§ 77, 92; First Baptist Church of Taft v. Southern Mortgage Co., D.C., 39 F.2d 246; Pabst v. Roxana Petroleum Co., D.C., 30 F.2d 953; Lake v. Texas News Co., D.C., 51 F.2d 862.

"Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, at page 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248.

■ Where there is any doubt such doubt should be resolved against federal jurisdiction.

■ In the case of Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069, the Court says: "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. * * * 'The facts are merely the means, and not the end. The do not constitute the cause of action, but they show its existence by making the wrong appear. "The *thing,* therefore, which in contemplation of law as its *cause* becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result of these in a legal wrong,* the existence of which, if true, they conclusively evince" '. Chobanian v. Washburn Wire Company, 33 R.I. 289, 302, 80 A. 394."

■ I may not pass upon the sufficiency of the allegations as upon demurrer or upon motion to dismiss for failure to state a cause of action, since I am limited solely to the question of jurisdiction. If it should be held by the state court that the allegations are not sufficient to sustain a charge of joint liability against all three defendants, it would be the prerogative of the state court to dismiss upon demurrer, and not the prerogative of this court. So far as this court is concerned the plaintiff has elected to say, "I am founding my action against three joint tortfeasors, two of whom are residents of the same state as myself, and I do not choose to proceed against the defendant insurance company for any separate liability."

■ The cause of action is the subject matter of the controversy and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings.

■ In determining whether such action as here set up "is in contract or in tort", the court is to be governed "solely by the pleadings". 1 C.J. 1015; 1 C.J.S., Actions, § 46. And, in such connection, it is a familiar canon of construction that, "a construction of the pleading is to be preferred, where reasonably possible, which will give effect to all of its material allegations". Flint & Walling Mfg. Co. v. Beckett, 1909, 167 Ind. 491, 79 N.E. 503, 507, 12 L.R.A.,N.S., 924. In the words of a leading case, the court, in passing on such issue, must look to "the substance of the entire pleading". Ft. Smith & Western R. Co. v. Ford, 1912, 34 Okl. 575, 126 P. 745, 746, 41 L.R.A.,N.S., 745. It not infrequently occurs that a complaint contains what one court has perhaps aptly characterized as "hermaphroditic allegations", but it will not do "to take words used in one part of the complaint, and, by separating them from the context and considering them without reference to the complaint as a whole, to draw from them an inference favorable to the defendants' theory, which is opposed to the one to be deduced from a reading of the whole complaint, and the one which the pleader evidently had in mind in framing it." Foote v. Ffoulke, 55 App.Div. 617, 67 N.Y.S. 368, 369.

■ Nor will the existence of a "contractual relationship between (parties) * * * preclude an action for tort." Mosby v. Manhattan Oil Co., 8 Cir., 1931, 52 F.2d 364, 369, 77 A.L.R. 1099. Truly, if it appears that a tort constitutes "the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of breach of a contract." 1 C.J. 1016. See also, 1 C.J.S.,

252

Actions, § 46. A leading case puts it: "The allegation by the plaintiff of contractual relations with the defendant does not necessarily make the action one upon contract, for these matters are often properly pleaded by way of inducement preliminary to an allegation of facts constituting a tort." Cowan v. Western Union Telegraph Co., 1904, 122 Iowa 379, 385, 98 N.W. 281, 283, 64 L.R.A. 545, 548, 101 Am.St.Rep. 268. Stated somewhat differently, the allegations as to a contract are frequently "purely incidental to the cause of action sued on", Hampton v. Supreme Lodge, Knights of Pythias, 1931, 161 S.C. 540, 543, 159 S.E. 923, 924; Winthrop v. Allen, 1921, 116 S.C. 388, 392, 108 S.E. 153, and are referred to, "not for the purpose of 'founding a right to a recovery for the breach of the contract' ". Pickens v. South Carolina & G. Railroad Co., 1898, 54 S.C. 498, 502, 32 S. E. 567, 568, but merely "as an incident, though a necessary incident, to the commission of the fraud claimed to be charged". Rogers v. Virginia-Carolina Chemical Co., 3 Cir., 1906, 149 F. 1, 12; Attleboro Mfg. Co. v. Frankfort Marine Accident & Plate Glass Ins. Co., C.C.Mass.1909, 171 F. 495; Good v. Hartford Accident & Indemnity Co., D.C., 39 F.Supp. 475; Barfield v. Southern Ry. Co., D.C., 47 F.Supp. 684.

If due regard to be had to the structural essence of the immediate complaint and looking, as we must, to the substance of the entire pleading, I cannot say that the complaint states a separate and independent claim or cause of action against the defendant insurance company.

The removing defendant contends that the prayer for relief in the complaint discloses that the action is *ex contractu* instead of *ex delicto*. The jurisdiction of Federal District Courts is determined by the averments in the pleadings and not by what is demanded in the prayer for relief. Campbell v. Jordan, D.C., 73 F. Supp. 318.

For the foregoing reasons, the motion to remand must be granted, and it is so ordered.