No. 82-478

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

RICHARD S. MARTINSON & BETTY L.
MARTINSON,

Plaintiffs and Appellants,

-vs-

ROBERT THOMPSON & BEVERLY THOMPSON,

Defendants and Respondents.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary L. Beiswanger, Billings, Montana
S. Charles Sprinkle, co-counsel, Forsyth,
Montana

For Respondent:

William F. Meisburger, Forsyth, Montana

Submitted on Briefs: May 19, 1983

Decided: August 4, 1983

Filed: AUG 4 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Judgment was entered July 27, 1982, in the District Court of the Sixteenth Judicial District, Rosebud County, denying Richard and Betty Martinson's action to terminate Robert and Beverly Thompson's lease of the Oak Room Bar and Lounge. Martinsons are appealing that judgment. We affirm.

In 1977, Richard and Betty Martinson (Martinsons) purchased the Choisser Building in Forsyth, Montana. A portion of the street level of the building was then being operated by Lewellyn Dalby and Dom DeSocio as the Oak Room Bar and Lounge. On January 23, 1978, Martinsons leased the Oak Room Bar to Keith and Roxane Gilje. The lease was to run for six years: March 1, 1978 to February 29, 1984. The Giljes assigned their lease of the bar to Robert and Beverly Thompson on September 10, 1979.

The second and third floors of the Choisser Building are used as a hotel. After remodeling one of the hotel's apartments for their own use, the Martinsons moved from Billings to their hotel in June of 1980.

The noise and music from the Oak Room Bar allegedly kept the Martinsons and some of the guests at the hotel from sleeping. The Martinsons sent a demand letter to the Thompsons on February 27, 1981, requesting that they reduce the level of noise emanating from their bar or face legal action. The noise allegedly continued, so on June 17, 1981, the Martinsons sent the Thompsons a notice of eviction stating that the lease would terminate on July 20, 1981.

The Thompsons refused to surrender possession of the bar. Therefore, the Martinsons filed a complaint August 5, 1981, requesting that:

2

1. The lease be terminated as of July 20, 1981;

2. Possession of the premises be awarded Martinsons;

3. Thompsons be required to pay to Martinsons $45.00 per day as treble rent for each day after July 20, 1981, that Thompsons retain possession of the bar; and

4. Martinsons be awarded reasonable attorney's fees and costs.

Thompson's motion to dismiss was denied October 21, 1981. Thereafter, Thompsons filed an answer and counterclaim November 9, 1981, denying that the noise from the bar was of a level which would constitute a nuisance and alleging damages for Martinsons' failure to supply reasonable heat to the bar in an effort to "freeze-out" Thompsons. The actions were consolidated and a bench trial was held June 24 and 25, 1982.

Martinsons' theory was that they had the right to terminate Thompsons' lease because Thompsons violated an implied covenant not to operate their bar in such a manner as to create a nuisance. The Martinsons presented evidence at trial in an effort to prove that the bar was being operated as a nuisance. Since Thompsons refused to acknowledge termination of the lease and to surrender possession of the premises, Martinsons contend that on July 20, 1981, Thompsons were in violation of the unlawful detainer statutes, Chapter 27, Title 70 of the MCA.

The Thompsons presented substantial evidence to prove that the bar was not being operated as a nuisance and that the Martinsons were not providing reasonable heat to the bar. Thompsons also presented evidence of the economic damages they suffered because of Martinsons' actions.

Findings of fact and conclusions of law were issued July 15, 1982, and a judgment was rendered July 27, 1982. The trial judge held that Martinsons could not terminate their

lease with Thompsons because Thompsons had violated no covenant contained within the lease. Further, the trial judge stated that the lease could not be cancelled under any theory of nuisance because the Thompsons were simply doing what they had a right, under the lease, to do - operate a bar. Finally, the trial judge concluded that, although Thompsons were entitled to damages for a breach of their lease, no damages would be awarded because Thompsons' evidence of damages was too speculative.

Martinsons raise a number of issues in their appeal of the findings, conclusions and judgment. They can be summarized as follows:

1. Can a lease be terminated, under the unlawful detainer statutes, for violation of an alleged implied covenant not to operate the leased premises so as to create a nuisance?

2. Is there substantial credible evidence to support the trial court's finding that there was no nuisance?

We find issue two to be dispositive.

Martinsons filed an unlawful detainer action at the trial court level. Section 70-27-108, MCA, states that unlawful detainer occurs when a tenant of real property for a term less than life 1) holds over after the expiration of the term; 2) continues in possession after defaulting in the payment of rent and after three days written notice demanding payment; or 3) continues in possession after neglecting or failing to perform conditions or covenants of the lease and after three days written notice demanding performance of the conditions or covenants.

The Eighth Circuit Court of Appeals stated in Mosby v. Manhattan Oil Co. (8th Cir. 1931), 52 F.2d 364 at 369:

4

> "One of the implied obligations of a lessee is that he shall so use the leased premises as not to injure his lessor by a nuisance thereon."

Citing Mosby, Martinsons allege that their lease with Thompsons should be terminated because Thompsons violated an implied-in-law obligation to use their leased property in such a manner as not to create a nuisance. We need not decide this question because there is substantial credible evidence to support the District Court's finding that the bar was not being operated as a nuisance.

Numerous individuals testified at trial that the bar was no noisier than any other bar they had frequented. The Thompsons testified that they had greatly reduced the number of live bands playing at the bar. Thompsons hired bands to play on seventeen occasions from January to June, 1980; on eight occasions from July to December, 1980; and on four occasions during the entire 1981 year. As of June 25, 1982, no bands had played at the Oak Room Bar in 1982. The trial judge held that the lease could not be cancelled on any theory of nuisance because the Thompsons were doing only that which their lease entitled them to do - operate a bar. The finding that this operation was not a nuisance is supported by the record.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

5