## WYOMING IRRIGATION COMPANY vs. YARNELL, ET AL.

### (No. 1187, March 6, 1924; 223 Pac. 332.)

CONTRACTS—CONSTRUCTION—WATER AND WATER COURSES—IRRIGA-
TION—DITCHES—WORK AND LABOR—RECOVERY FOR SERVICES.

1. A contract must be considered as a whole, and the intent of the parties gathered from all its parts.

2. Where a contract by one clause required an irrigation company to enlarge and maintain a ditch owned by others at its own expense for 10 years, later clauses requiring the company to continue maintenance after that time "so as to cause as little seepage as practicable," no mention being made of who was to bear the future expenses, were construed so as to harmonize with the 10-year limitation, and the owners were required to pay the reasonable costs thereafter.

3. Where services are performed for the benefit of another with his assent, and not under circumstances indicating a gratuity, he is liable for the reasonable value thereof.

APPEAL from District Court, Big Horn County, PERCY W. METZ, Judge.

Action by Wyoming Irrigation Company, against E. E. Yarnell and others to recover ditch maintenance charges. There was a judgment for plaintiff and defendants appeal.

*Brome & Hyde* for Appellants.

The Court erred in finding that defendants were chargeable with maintenance after May 1st, 1919, according to their proportionate interests; the court did not find the proportionate shares of defendants; under the contract of March 1909, defendants are not liable for the cost of maintenance at all; nothing in the contract requires them to pay maintenance charges, 13 C. J. 524-525; Phillips v. Hamilton, 17 Wyo. 41; the contract is clear in terms and does not require interpretation, Imp. Co. v. Surety Co., 89 N. E. 374; Phila. Co. v. Trimble, 10 Wall. 367; Russell v. Young, 94

Fed. 45; the rule of construction is elementary and applies here.

*R. B. West* and *Edward H. Ellis* for Respondent.

Appellants' brief does not touch upon the management of the Shell Canal; the contract places the management of the canal in the parties of the second part; appellants' brief is confined to the second issue, to-wit: the duty of owners of rights through the McDonald ditch; the agreement alleged in the reply wherein respondent prior to May 1st, 1919 entered into an agrement with owners of rights through the Shell Canal, to pay maintenance charges after May 1st, 1919; courts will ascertain if possible the intent of parties to the contract, 13 C. J. 521-23. 542-544; the contract must be construed as a whole, 13 C. J. 525-28; ditches must be maintained, in order to carry water; prior to this contract, maintenance obligations rested upon the owners of land irrigated from the ditch; the object of the contract was to provide for an enlargement of the ditch; as a consideration, party of the second part, agreed to maintain the ditch free of cost to parties of the first part, for ten years; no express provision is made in the contract for maintenance after ten years; in order to impose maintenance obligations upon respondent after the ten year period, it will be necessary to read into the contract covenants that are not there; prior to the contract land owners maintained the McDonald ditch; in the contract providing for its enlargement and change of name to Shell Canal, respondent assumed the maintenance thereof, for ten years; after the ten year period there is an implied covenant to maintain the ditch at joint expense of the parties, 13 C. J. 558; Phillips v. Hamilton, 17 Wyo. 41; Noon v. Minoriski, 108 Pac. 1069; Cummings v. Nielson, 129 Pac. 619, 13 C. J. 585; in making a provision that no change can be made for maintenance for a ten year period, the parties intended to agree that such a change should be made after ten years, and that reasonable charges should be fixed; this was in fact agreed upon between the parties at a subsequent meeting; after the McDonald ditch became

merged in the Shell Canal it became a partnership ditch, requiring each partner to pay his pro rata share of maintenance, Wyo. Comp. Stats. Chap. 72; the decision of the trial court is sustained by the evidence.

BURGESS, District Judge.

This is a case brought here by direct appeal from the District Court of Big Horn County to review a judgment of that Court holding the defendants below, appellants here, liable for their proportionate part of the expense of the maintenance and operation of a ditch known as the McDonald Ditch.

The correctness of the decree below depends upon the construction to be given the following contract (omitting certain formal and immaterial parts) :

"THIS AGREEMENT made this 13th day of March, 1909, by and between The McDonald Ditch Company, a co-partnership composed of the following parties, to-wit:

A. H. Earley and Emma Earley, his wife, W. W. Stevens, and Martha Stevens, his wife, Charles L. Owen and Geneva E. Owen, his wife, W. C. Cropsey and Rose H. Cropsey, his wife, H. T. Harris and Cornelia B. Harris, his·wife, F. L. Kirkpatrick and Ardena A. Kirkpatrick, his wife, H. K. Sweney and Annie L. Sweney, his wife, W. T. Whaley, F. L. Reeves, Leonard Fliehmann, I. D. Schenck and Flora M. Schenck, his wife, David Flockhart, G. A. Harris and Myrtle M. Harris, his wife, W. A. Cowan and Goldie Cowan, his wife, parties of the first part and the Wyoming Land and Irrigation Company, a corporation duly organized under and by virtue of the laws of the State of Wyoming, party. of the second part.

WITNESSETH : That for and in consideration of the covenants hereinafter mentioned and the sum of One Dollar each to the other in hand paid, receipt of which is hereby especially acknowledged, the parties hereto do hereby contract as follows:

1st.   The parties of the first part hereto do hereby each one for himself and herself respectively and as co-partners of the McDonald Ditch Company consent to the enlargement of the so called McDonald Ditch from its present size to sixteen (16) feet on the bottom and Twenty-five (25) feet on the top, this enlargement to begin at the head-gate and extend until the canal lines of the party of the second part begin.

2nd.   It is hereby agreed between all the parties hereto that the carrying capacity of said ditch shall be sufficient to carry four (4) feet of water in the ditch to where said party's of the second part main canal begins and leaves said McDonald Ditch.

3rd.   The parties of the first part do hereby grant and convey without cost or damage to the party of the second part, their successors and assigns, all necessary right of way across their individual land for the enlargement of said McDonald Ditch, hereby waiving all homestead rights and any and all other rights of the respective parties in and to all the real estate necessary for the construction and maintenance of said ditch as herein contemplated and as more fully shown and described on map hereto attached and marked ''Exhibit A'' and made a part of this agreement and said map shall be approved by writing on said map as follows, the words 'approved this........................day of............................ A. D. 1908' and signed, P. M. Galligher, engineer for the parties of the first part and F. C. Emerson, engineer for the party of the second part.   It being fully understood and agreed between the parties hereto that in consideration of the above covenants on the parties of the first part hereto, the parties of the second part hereby agree to make said enlargement of the first parties' ditch as above described at its own expense; and does further agree to maintain for a period of ten years during, up to and including May first 1919 the said first parties' McDonald ditch after the completion of its enlargement to the point where the canal of said party of the second part begins without charge or cost

for repairs or maintenance of the same to the said parties of the first part or either or any of them.

4th. The said party of the second part further agrees to complete said enlargement in a first class substantial manner and during a time so as not to interfere with the irrigation or harvesting of the crops of any of the said parties of the first part, it being contemplated that the building and construction shall commence after the harvesting of the crops in the fall of 1908; And it is further agreed that the said enlargement shall be completed on or before May 1st, 1909. It is hereby further agreed by and between the parties hereto that the said party of the second part shall have entire and exclusive charge of said canal and headgates and shall turn out to the said parties of the first part and each of them the water to which each party or parties respectively may be entitled according to the respective rights they now have or may hereafter in any proper and legal manner acquire. The headgates of the said parties of the first part and each of them shall be constructed and maintained in a good substantial manner by the said party of the second part. It is hereby further agreed by and between the parties hereto that the work to be done by the said party of the second part shall be done in a good workmanlike manner and the headgates to be by it built and all material to be used shall be good substantial material and said work so to be done by the said party of the second part and all material to be by it used in the work herein contemplated shall be in accordance with the suggestion of P. M. Galligher, engineer for the parties of the first part in his letter addressed to the officers and members of the McDonald Ditch Company, of May 19, 1908, which is as follows and is hereby made a part of this contract:

And it is hereby further agreed that any of the rights mentioned and accruing to any of the said parties hereto in the said letter shall in fact so accrue as therein mentioned. And it is hereby further agreed that all the headgates of the said enlarged ditch and all the headgates of the parties

of the first part shall hereafter be maintained in a good and substantial manner as herein above set forth and the enlarged ditch shall be kept in good and substantial manner so as to fully and completely subserve the purposes herein contemplated by the said party of the second part; And the said party of the second part further agrees to so build and maintain said enlarged ditch so as to cause as little seepage as practicable and in no event increase the seepage from said ditch in so far as it is practicable to prevent same to the damage of any of the said parties of the first part.  It is further agreed by and between the parties hereto that any flumes or other material now connected or used with the said ditch is hereby transferred and conveyed unto the parties of the second part, their successors and assigns.————''

The parties to this suit are either parties to the contract, or successors in interest to those who were.

The Court below in its decree, in response to the issues raised by the pleadings, found among other things ''that after the first day of May, 1919, the plaintiff had legal right to make charge upon the defendants herein and all those similarly situated for their proportionate interest in the cost of maintenance and operation of the ''McDonald ditch,'' and it is this part of the decree, and this part only, that the appellants challenge as contrary to the intent of the parties expressed in the contract.

The owners of the McDonald ditch, as the parties of the first part, covenanted and agreed, by this contract, to grant, and did grant, to the Wyoming Land and Irrigation Company, the party of the second part, the right to enlarge the ditch, and the right to go upon their individual lands for the purpose of enlarging the same and maintaining it after it was enlarged.  In consideration of these covenants The Wyoming Land and Irrigation Company ''agrees to make said enlargement of the first parties' ditch as above described at its own expense; and does further agree to maintain for a period of ten years during, up to, and including

May first 1919 the said first parties' McDonald ditch after the completion of its enlargement to the point where the canal of said party of the second part begins without charge or cost for repairs or maintenance of the same to the said parties of the first part or either or any of them.'' The contract then prescribes that the enlargement shall be in a first class substantial manner and during a time that will not interfere with the irrigation or harvesting of crops, and that the said party of the second part shall have entire and exclusive charge of said canal and headgates, and that the headgates of the parties of the first part shall be constructed and maintained in a good substantial manner by the said party of the second part. This is followed by a statement in detail of the nature and extent of the enlargement to be done, which we have omitted from the contract above set forth. We then find, toward the latter part of the contract, this language, ''And it is hereby further agreed that all the headgates of the said enlarged ditch and all the headgates of the parties of the first part shall hereafter be maintained in a good and substantial manner as herein above set forth and the enlarged ditch shall be kept in good and substantial manner so as to fully and completely subserve the purposes herein contemplated by the said party of the second part; and the said party of the second part further agrees to so build and maintain said enlarged ditch so as to cause as little seepage as practicable——''

It will be noted we have in this contract two separate and distinct clauses or provisions relating to the maintenance of the enlarged ditch,—one in the fore part wherein it is stated ''that in consideration of the above covenants on the parties of the first part'' the irrigation company is to maintain for ten years free of expense to the parties of the first part the enlarged ditch; the other, in the latter part of the contract, that the enlarged ditch and headgates are to be maintained by the Irrigation Company ''in a good and substantial manner'' and ''so as to cause as little seepage as practicable.'' No mention is made in these later clauses of

who is to bear the expense of such maintenance, and it is because of this failure, coupled with the fact that it is the duty of the Irrigation Company to maintain the enlarged ditch, that affords ground for the contention of appellants that the burden of the whole of such expense, after May 1, 1919, must rest where the duty rests, that is, upon the Irrigation Company.

The contract must, of course, be considered as a whole and the intent of the parties gathered from all its parts.

In the fore part of the contract the parties deal with the matter of the expense of the maintenance of the enlarged ditch, and they place the whole of it upon the Irrigation Company for a limited time,—ten years. Now, when they come to the latter part of the contract why would they abrogate the ten year provision, and place the whole expense upon the Irrigation Company for all time to come? Or, if it was their intent that the whole expense was to be borne without limit of time by the Irrigation Company, as the appellants contend, why should they prescribe a limitation of ten years? If we adopt the views of appellants we have two portions of the contract inconsistent with each other, one imposing upon the Irrigation Company the whole expense for a period of ten years, the other the whole expense for a period of indefinite, unlimited duration. Such a construction should, of course, be avoided if reasonably possible, for certainly the parties did not intend to introduce contradictory clauses in their contract.

Now in one part of the contract the parties were dealing with one phase of the maintenance of the enlarged ditch,— who was to bear the expense—and they placed the whole of it upon the Irrigation Company and for a limited time. In the other part they were dealing with another phase of the same matter—who was to maintain the ditch and in what manner—and they provided the Irrigation Company should maintain it, and in a good substantial manner, and so as to cause as little seepage as possible. There was reason why the Irrigation Company should be named as the party to

maintain the ditch.   There were many owners in the Mc-
Donald ditch, and with its enlargement and extension its
affairs were bound to become more varied and complicated,
and it was, no doubt, to secure a unity of control and effi-
ciency of management so necessary to the success of the new
ditch, that the parties lodged in the hands of one party, the
Irrigation Company, the responsibility of its exclusive con-
trol and maintenance.   The enlarged ditch, of course, had
to be maintained.   Some one must see to that maintenance.
That duty was cast upon the Irrigation Company as the
most logical party, under the circumstances, to undertake
it.

Because the Irrigation Company assumed the obligation
of maintaining the enlarged ditch and headgates, it does
not follow that the expense of such maintenance must fall
exclusively upon it.   Such maintenance is necessary and is
for the benefit of the owners of the enlarged McDonald
ditch as well as the others.   In maintaining such ditch the
Irrigation Company must perform work and labor and in-
cur expense, and it is elementary that where services are
performed for the benefit of another, with his assent, and
not under circumstances indicating a gratuity, he is liable
for the reasonable value thereof.   Here the services in main-
taining the ditch are for the benefit of the owners of the
McDonald ditch, as well as others; they are rendered with
their assent because they are parties to the contract requir-
ing such maintenance, and it can hardly be contended that
the circumstances indicate a gratuity.

To escape liability the appellants must show apt language
in their contract relieving them therefrom, and there is
none, for the Irrigation Company undertakes to maintain
the ditch without charge or expense to them for a period of
ten years, and ten years only, which expired May 1, 1919.
From that date on they are liable for their proportionate
share of the expense of the maintenance and operation of
the enlarged McDonald ditch and its headgates.   Upon what

basis this share shall be determined is not before us, and upon it, of course, we venture no opinion.

The judgment of the District Court is affirmed.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See 13 C. J. p. 525; 40 Cyc. p. 828 (1925 anno) 2808