483 P.2d 664

Joe TAYLOR, Plaintiff-Respondent
and Cross-Appellant,

v.

Max HERBOLD, Individually and Max Her-
bold, Inc., Defendants-Appellants and
Cross-Respondents.

No. 10541.

Supreme Court of Idaho.

April 8, 1971.

134

Goodman & Duff and Creason & Creason, Rupert, for appellants.

James Annest, Burley, for appellee.

SHEPARD, Justice.

This is an action by plaintiff in two counts, one for breach of a contract to purchase potatoes and, secondly, for tortious damages arising from said breach of contract. Following trial to a jury, a verdict was returned for the plaintiff on each count. Thereafter, the trial court granted defendants' motion for a judgment notwithstanding the verdict on the second count. Defendants have appealed and

plaintiff has cross-appealed. We affirm the action of the trial court.

Plaintiff-respondent and cross-appellant (hereinafter plaintiff) was at the time of the transactions herein a potato farmer in the Paul, Idaho area. Defendants-appellants and cross-respondents (hereinafter defendants) were in the produce business. For approximately three years prior to 1966, plaintiff had sold potatoes to defendants with no problems arising between the parties.

Plaintiff had a large potato cellar containing potatoes grown on two different lots of land. These potatoes were separated into two lots by a divider board, but within each lot the potatoes were not segregated but merely piled on the floor of the cellar. One lot of potatoes was denominated the Cassia lot and the other called the Senter lot. At the time of the contract in question approximately 4,000 cwt. sacks of the Senter lot had been sold and there remained approximately 10,300 cwt. sacks in that lot.

Plaintiff and defendants entered into negotiations and defendants ordered approximately 7,000 cwt. sacks at $1.65 per cwt. field run with "dirt rot and green out" by dry dock inspection. The contract dated February 10, 1966, was in the nature of an order blank and signed by the parties. No terms of delivery were included nor was there identified the lot from which the potatoes were to be selected. The evidence is conflicting as to whether any delivery date was discussed or, if so, what the date was to be. Plaintiff contended that the agreed delivery period would be within seven to ten days and the defendants conceded that the delivery date was to be 30 to 60 days from the date of the contract.

Thereafter, plaintiff talked to defendant several times by telephone and in person to ascertain why possession of the potatoes had not been taken by defendants. Each time defendant assured plaintiff that upon the conclusion of current business he would pick up the potatoes. About April 1, 1966, plaintiff and defendant had a heated telephone conversation and thereafter plaintiff called almost weekly. Beginning in March, 1966, plaintiff had placed thermostatically controlled fans in the cellar to circulate cool air, but about May 10, 1966, when the cellar was necessarily opened, the potatoes began to deteriorate rapidly. Plaintiff was able to sell a portion of the potatoes under contract for about 58 cents per cwt. The remainder of the potatoes under contract, as well as the remainder of the Senter lot, remained unsold. It is undisputed that defendants never took delivery of any potatoes covered by the contract.

Plaintiff instituted this action for the value of the 7,000 cwt. potatoes covered by the contract and for the value of the 3,300 cwt. potatoes remaining unsold in the Senter lot and not covered by the contract. At the conclusion of plaintiff's case, defendants moved for a directed verdict on each count, which motions were denied. The jury returned a verdict for plaintiff on each count and thereafter the trial court granted defendants' motion for judgment notwithstanding the verdict on the second count.

■ Defendants contend that the verdict on the first count was not supported by the evidence. Where the findings of the trial court are supported by competent substantial, although conflicting, evidence, those findings are binding and conclusive on appeal. Olsen v. Hawkins, 90 Idaho 28, 408 P.2d 462 (1965); Clayton v. Jones, 91 Idaho 87, 416 P.2d 34 (1966). It is obvious that the jury believed the evidence submitted by plaintiff and such evidence was competent and substantial. The factual questions before the jury were: Had there been a rescission of the contract?; Was there a good faith belief by the plaintiff that defendants would eventually take the potatoes?; What damages were suffered by the plaintiff because of the breach of the contract?; and what delivery date was contemplated by the parties? There was ample evidence presented by the plaintiff to enable the jury to find for him on each question of fact.

■■ Defendants also contend that the trial court abused its discretion in refusing to submit interrogatories to the jury. The submission of special interrogatories is entirely within the discretion of the trial court. Tsuboi v. Cohn, 40 Idaho 102, 231 P. 708 (1924); Peterson v. Hailey National Bank, 51 Idaho 427, 6 P.2d 145 (1931). It is clear that it is not an abuse of discretion to refuse to submit special interrogatories in a cause where the factual issues are not complicated and particularly when all points sought to be covered by the special interrogatories have been properly submitted by jury instructions. Yearsley v. City of Pocatello, 69 Idaho 500, 210 P.2d 795 (1949); C. C. Anderson Stores Co. v. Boise Water Corp., 84 Idaho 355, 372 P.2d 752 (1962).

■ Defendants also contend that certain testimony amounted to the showing of an offer of compromise or settlement and that the trial court should have submitted instructions to the jury that such offer could not be considered. We note that defendants did not properly object to such testimony nor did they submit any requested instructions on that point. In such case the failure to so instruct is not error. Joyce Brothers v. Stanfield, 33 Idaho 68, 189 P. 1104 (1920); Owen v. Taylor, 62 Idaho 408, 114 P.2d 258 (1941).

■ Defendants contend that certain of the jury instructions were erroneous. We find no merit to those specifications suggesting erroneous instructions. The instructions state the law clearly and adequately and the legal theories stated therein are supported by the facts produced at trial. Defendants also contend that the trial court failed to submit its jury instructions to counsel and that such failure constitutes reversible error. While better trial practice may well be to provide the instructions to the parties, it is our opinion that such was not reversible or prejudicial error in the case at bar. The records in this case were evidently meticulously kept by both the reporter and the clerk. The record indicates that at the close of the testimony and in the absence of the jury, a colloquy took place between the trial judge and trial counsel. At that time the trial judge indicated that he intended to recess until the following morning at which time counsel would be permitted to present their argument to the jury and that the jury would be instructed by the court thereafter. No request was made by counsel for copies of the instructions the court intended to deliver. No objection was voiced by counsel at that time for failure to receive the court's instructions. The record further indicates that the following morning, upon reconvening of the court, trial counsel presented their arguments to the jury. After a brief recess, court was reconvened and the court's instructions were read to the jury. At no time does the record indicate that counsel for defendants requested copies of the jury instructions nor was any objection voiced to the court instructing the jury in the absence of counsel having a copy of the court's instructions. We further note that the court's instructions were approximately 19 in number. Defendants' counsel had submitted 19 requested instructions. The record discloses that while some of them were rejected and not given by the trial court, the great majority were either given or covered by the court's instructions. No prejudice has been shown by the failure of the trial court to deliver its instructions. If the failure of the trial court to comply with I.R.C.P. 51 was error, such cannot be considered prejudicial error in the absence of counsel granting the trial court an opportunity to correct such error by timely notice and/or objection.

■ Defendants further complain that the jury was not furnished written instructions to carry into the jury room. The record discloses that although the instructions were not requested by the jury, they were nonetheless delivered by the bailiff prior to the time that the foreman announced a verdict had been reached. The record does not disclose the precise time that the jury received the instructions and error will not be presumed. We further note that the record is again silent con-

cerning any notice or objection by defendants' counsel to the procedure used by the trial court. Again, we point out that counsel will not be heard to suggest error for the first time on appeal without having granted the trial court the opportunity to correct its error, if indeed error it was.

■ Defendants lastly contend that the trial court erred in failing to grant defendants' motion for a non-suit on plaintiff's second count at the conclusion of plaintiff's case. Defendants suggest that the failure to grant a non-suit on plaintiff's second count resulted in his (the defendant becoming a "target defendant" because of sympathy of the jurors for the plaintiff. No prejudice has been shown by the defendants. The granting or refusal of a motion for non-suit is within the discretion of the trial court and the court should act cautiously and carefully scrutinize all evidence before granting a motion for non-suit. Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498 (1947). The court in *Burt*, quoting from Adams v. Bunker Hill, 12 Idaho 637, 89 P. 624 (1906), said:

> " 'The only question presented by the record for our determination is whether the evidence was sufficient to support a judgment on the findings of the jury in favor of the plaintiffs in case they so found on the proofs before them. Appellate courts do not favor nonsuits; the trend of modern decisions is to discourage them.' "

■ A motion for judgment notwithstanding the verdict is a delayed motion for a directed verdict and affords the trial court an opportunity to correct its erroneous refusal to direct a motion for non-suit or a directed verdict. Peterson v. Bannock County, 61 Idaho 419, 102 P.2d 647 (1940); Ralph v. Union Pacific Railroad Co., 82 Idaho 240, 351 P.2d 464 (1960).

■ The error of not granting defendants' motion for a directed verdict, if such was error, was corrected by the subsequent granting of the motion for judgment notwithstanding the verdict on the second count. Defendants must therefore show that the mere existence of the second count worked a material harm to his defense on the first count. A careful reading of the record does not show any prejudice resulting from the denial which would be of sufficient magnitude to require a new trial on the first count. As we have said herein, there was ample and sufficient evidence presented by the plaintiff on the first count to sustain the verdict for the plaintiff in that regard.

■ We turn now to the contentions of the plaintiff on his cross-appeal. Plaintiff first contends that the trial court erred in refusing to grant him interest at the rate of six per cent per annum from the time of breach of the contract until the date of judgment. Interest should be allowed as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation. United States Fidelity and Guaranty Co. v. Clover Creek Cattle Co., 92 Idaho 889, 452 P.2d 993 (1969). See also Farm Development Corp. v. Hernandez, 93 Idaho 918, 478 P.2d 298 (1970). The case at bar does not fall into such classification since plaintiff herein had the duty to, and in fact did, mitigate the damages otherwise resulting from defendants' breach of the contract. Plaintiff disposed of the potatoes at a lesser sum than that which the defendants had promised to pay. The sum actually obtained was not established as of the time of the breach of the contract. We further point out that while the contract amount was definite, i. e., 7,000 cwt. at $1.65 per cwt., we note that the contract contained a "tare" provision excluding from the amount to be paid those potatoes which were inspected and found to have "dirt rot and green." Plaintiff, during the negotiations leading to the contract, had attempted to obtain a guarantee of the "tare" amount of six per cent, but was unable to obtain the agreement of the defendants to such proposal. We hold that in the case at bar, therefore, the sum due was not "mathematically and definitely ascertainable."

Plaintiff also urges that the trial court erred in failing to allow proof of special damages, to-wit: of interest which plaintiff was paying on a crop loan for which the potatoes in dispute were security. The trial court held, and we agree, that the claim of plaintiff for damages in this regard would only be speculative because of the lack of foreseeability.

Plaintiff lastly contends that the trial court erred in the granting of judgment notwithstanding the verdict on plaintiff's second count. Plaintiff's theory of his second count was that there was a "dispute in the cellar" and that other buyers in the area would not enter the cellar for the purpose of buying the remaining potatoes in the undivided Senter lot. Plaintiff contends that such action resulted from the lack of division of the Senter lot into two groups—the amount covered by the contract in question herein and the remaining 3,300 cwt. of potatoes—and that other buyers were therefore reluctant to purchase the remaining 3,300 cwt. of potatoes. Plaintiff claims that the situation resulted from the "tortious" conduct of defendant in failing to fulfill his contract of purchase.

The law governing the ability to obtain remedies for breach of contract, as well as tortious behavior, is confusing, with few, if any, court decisions on the subject. Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things which furnishes the occasion for a tort. 38 Am.Jur. 662, Negligence § 20. If the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract and the defendant is negligent, then the action is one of tort. To found an action in tort, there must be a breach of duty apart from the non-performance of a contract. 52 Am.Jur. 379, Torts, § 26.

As stated in 1 C.J.S. Actions § 49(c), page 1112:

"The mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself, only an action ex contractu being available. * * * However, active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; *mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient.*" (Emphasis supplied.)

It is also stated, 65 C.J.S. Negligence § 4(6), page 495:

"Where the only relation between the parties is contractual, the liability of one to the other, in an action of tort for negligence, must arise out of some positive duty which the law imposes because of the relationship or because of the negligent manner in which some act which the contract provides for is done; *and the mere breach of an executory contract, where there is no general duty, cannot furnish the basis for such an action.*" (Emphasis supplied.)

The United States Supreme Court in the case of Atlantic & P. Railway Co. v. Laird, 164 U.S. 393, 17 S.Ct. 120, 41 L.Ed. 485 (1896), in quoting from Kelley v. Railway Co., 1 Q.B. 944 (1895), stated:

" 'The distinction is this: If the cause of complaint be for an act of omission or nonfeasance, which, without proof of a contract to do what has been left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort.' "

An exception to the rules above stated appears to be those situations in which misfeasance rather than nonfeasance was the issue. The authorities cited by plaintiff fall into such category and therefore are not applicable to the case at bar. While there are certain other exceptions, primarily involving cases in which one of the parties was engaged in a public calling or public transportation, those exceptions are not applicable to the facts in the case at bar. See Prosser, Law of

Torts, p. 634, et seq. See also Arterburn, The Origin and First Test of Public Callings, 75 University of Pa. Law Review 411.

We hold therefore that the trial court was correct in its granting of the judgment notwithstanding the verdict as to plaintiff's second count, although, as hereinabove stated, the trial court may have erred in failing to grant defendants' earlier motion for a directed verdict on plaintiff's second count at the conclusion of plaintiff's case.

The judgment of the trial court is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and SPEAR, JJ., concur.