Jeanine TATE, d/b/a Circle T Answering Service, and Walter F. Tate, Appellants (Plaintiffs),

v.

MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Appellee (Defendant).

No. 5632.

Supreme Court of Wyoming.

June 8, 1982.

Rehearing Denied July 8, 1982.

Charles E. Graves, of Graves, Hacker & Phelan, P. C., Cheyenne, signed the brief and appeared in oral argument on behalf of appellants.

Thomas A. Nicholas, III, of Hirst & Applegate, Cheyenne, signed the brief and W. Douglas Hickey, of Hirst & Applegate, Cheyenne, appeared in oral argument on behalf of appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellants-plaintiffs' complaint in this case sets forth two claims for relief; one founded on negligence and one founded on breach of contract, both of which resulted from the same incident. Appellants and appellee-defendant entered into an agreement whereby appellee agreed to furnish and install a "call director" and a private branch exchange service (hereinafter referred to as PBX) at appellants' business location for use in operation of an answering service. Appellants contend that the delay in the installation of the PBX damaged them in the amount of $30,000.00. In its answer, appellee alleged, among other things, that any delay was caused by appellants' negligence and that appellants' negligence was equal to or greater than any negligence of appellee.

The trial court granted appellee's motion for a summary judgment and found that the incident was governed by the provisions of the appellee's General Exchange Tariff which provides in pertinent part:

"G. LIABILITY

\*       \*       \*       \*       \*       \*

"2. When service is interrupted for a period of at least 24 hours after notice by the customer to the Company, a credit allowance equal to $1/30$ of the tariff monthly rate for all services and facilities furnished by the Company rendered useless shall apply for each 24 hours, or major fraction thereof, during which the interruption continues after notice to the Company. Credit allowances in any billing period shall not exceed the total charges for that period for the services and facilities which were rendered useless.

\*       \*       \*       \*       \*       \*

"5. APART FROM THE CREDIT ALLOWANCE STATED ABOVE, NO LIABILITY SHALL ATTACH TO THE TELEPHONE COMPANY FOR DAMAGES ARISING FROM ERRORS, MISTAKES, OMISSIONS, INTERRUPTIONS, OR DELAYS OF THE TELEPHONE COMPANY, ITS AGENTS, SERVANTS OR EMPLOYEES, IN THE COURSE OF ESTABLISHING, FURNISHING, REARRANGING, MOVING, TERMINATING, OR CHANGING THE SERVICE OR FACILITIES (INCLUDING THE OBTAINING OR FURNISHING OF INFORMATION IN RESPECT THEREOF OR WITH RESPECT TO THE SUBSCRIBERS OR USERS OF THE SERVICE OR FACILITIES) IN THE ABSENCE OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT."

It found, further, that appellants' recovery would be limited to the credit allowance set forth in paragraph G.2 of the tariff in the absence of proof of gross negligence or willful misconduct and that the trial would be limited to appellants' "claims based upon the alleged gross negligence of" appellee. After a trial so limited, the jury found that the actions of appellee did not constitute gross negligence.

Appellants word several issues on this appeal, but each is included in the general question as to whether or not the summary judgment was proper as a matter of law.

Inasmuch as it was not, we reverse and remand the case.

The above quoted limitations contained in the appellee's General Exchange Tariff were accepted by the court in the grant of a summary judgment. We will consider them separately.

### G.5 LIMITATION

■ Turning first to the limitation of any liability on the part of appellee absent "gross negligence or willful misconduct" as provided in paragraph G.5 of the General Exchange Tariff, supra, we find such to be in conflict with the standard set by the legislature for determining liability for negligence in Wyoming.

Since the enactment of the comparative negligence statute, § 1–1–109, W.S.1977,[1] the determination of liability in a negligence case must be considered with reference to *comparative* negligence on a *percentage* basis. In *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979), we said at pages 192–193:

"Procedurally, a new and important element results from the statute. When contributory negligence is a factor, the jury must determine the percentage of negligence attributed to each party, rather than the broad categorizations of 'ordinary negligence' and 'gross negligence' as before. *Mitchell v. Walters*, supra [55 Wyo. 317, 100 P.2d 102 (1940) ]. This can result in exact computations such as those in *Quady v. Sickl*, 260 Wis. 348, 51 N.W.2d 3 (1952), in which the jury found plaintiff Quady 15.42 percent negligent, defendant Sickl 47.08 percent negligent, defendant Belden 14.17 percent negligent, and defendant Pankratz 23.33 percent negligent. The category of 'gross negligence' will no longer be pertinent except in a few isolated circumstances. The obsolescence of the term 'gross negligence' will be no great loss toward the attainment of equity. The term has been characterized as 'an unhappy term of ill-defined content.' Prosser, Torts 4th Ed.,

p. 10 (1971)." (Footnote omitted and bracketed material added.)

The case before us is an example of the inconsistency which results from an effort to correlate "gross negligence" with comparative fault. The trial court defined "negligence" as "the failure to use ordinary care" and "gross negligence" as "acts or omissions which are the result of a conscious indifference to the rights or welfare of the persons affected by them. Gross negligence is somewhat greater than ordinary negligence and somewhat less than willful and wanton misconduct." It then instructed the jury that the "defendant is at fault when it is grossly negligent" and the "plaintiffs are at fault when they are guilty of negligence." It instructed the jury "to determine the percentage of fault, if any, of each of the parties." The following special verdict form was submitted to the jury:

### "SPECIAL VERDICT FORM

"We, the jury, present the following answers to the questions submitted by the Court regarding Plaintiffs' claims against the Defendant:

"1. Did the actions of the Defendant constitute gross negligence?

"Yes ——

"No ——

"If your answer to Question No. 1 is yes then proceed to Question No. 2. If your answer to question No. 1 is no do not answer Questions 2 through 6.

"2. Was the gross negligence of Defendant the proximate cause of any damages sustained by the Plaintiffs?

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

1. Section 1–1–109, W.S.1977, provides:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"Yes _____

"No _____

"If your answer to Question No. 2 was yes then proceed to Question No. 3. If your answer to Question No. 2 was no then do not answer Questions 3 through 6.

"3. Did the actions of the Plaintiffs constitute negligence?

"Yes _____

"No _____

"If your answer to Question No. 3 is yes then proceed to Question No. 4. If your answer to Question No. 3 is no then proceed to Question No. 6.

"4. Was the plaintiffs' negligence a proximate cause of any damages sustained by the plaintiffs?

"Yes _____

"No _____

"If your answer to Question No. 4 is yes, then proceed to Question No. 5. If your answer to Question No. 4 is no, then proceed to Question No. 6.

"5. Considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the following persons?

"Jeanine Tate and Walter F. Tate,
　　　Plaintiffs　　(0% to 100%)___%

"Mountain Bell, defendant (0% to 100%)___%

"6. Without considering the percentage of fault found in Question No. 5, what total amount of damages do you find was sustained by?

"Jeanine Tate and Walter F. Tate,
　　　plaintiffs　　　$_____."

The jury answered the first question "no," and, pursuant to directions, did not answer the other questions.

The instructions requested the jury to "determine the percentage of fault." To do so between gross negligence and ordinary negligence, an additional element is necessary, i.e., the exact quantative relationship between the two. How much ordinary negligence is required to make 1 percent of gross negligence? The verdict form, in effect, directs that if appellee is not found to be grossly negligent, a comparison of fault is unnecessary. This is not that which is said in the comparative negligence statute. The statute provides that recovery would be barred if appellants' negligence was found to be at least 50 percent of the 100 percent attributable to the two parties. But gross negligence is not defined in a determinate percentage fashion. As said by Professor Prosser, supra, it is "an unhappy term of ill-defined content."

The public policy, then, as established by the comparative negligence statute is to abolish "gross" as a measure of negligence in negligence actions.

■ The parties to this action cannot change the state policy by contract. They cannot contract that liability in future instances will be measured only by gross negligence any more than they can contract that liability in future instances will be measured only by the old contributory negligence standard. To attempt to do so is quite different than placing a contractual limit on liability. It is an attempt to contractually change the standard or policy set by the state for determining the existence of liability. Such will not be allowed. "Contractual provisions cannot rise above constitutional and statutory law," *Tri-County Electric Association, Inc. v. City of Gillette*, Wyo., 584 P.2d 995, 1004 (1978).

"Willful misconduct" referred to in paragraph G.5 of appellee's General Exchange Tariff, supra, differs in kind from negligence. *Danculovich v. Brown*, supra. The trial court properly instructed the jury that willful misconduct was not an issue in this case.

■ Generally, a contract which is contrary to public policy will not be recognized by the court, and the parties to such contract will be left as the court finds them. *Owens v. Capri*, 65 Wyo. 325, 202 P.2d 174 (1949); and *Claus v. Farmers & Stockgrowers State Bank*, 51 Wyo. 45, 63 P.2d 781 (1936).

"  *  *  *  [B]ut that rule is not applicable in a case where the contract is merely unauthorized rather than illegal and hence immoral.  *  *  *  " *Town of Cody v. Buffalo Bill Memorial Ass'n*, 64 Wyo. 468, 196 P.2d 369, 382 (1948).

Nor will we apply the general rule in this case when the contract is contrary to public policy only because of a provision in a single paragraph of a voluminous work which is made part of the contract by reference, and when the considerations from both sides are sufficient for performance absent such paragraph. See *Fuchs v. Goe*, 62 Wyo. 134, 163 P.2d 783, 166 A.L.R. 1329 (1945); *Board of Commissioners of Natrona County v. Casper National Bank*, 56 Wyo. 132, 105 P.2d 578, 130 A.L.R. 727 (1940); and *Laibly v. Halseth*, Wyo., 345 P.2d 796 (1959).

The contract is valid, but paragraph G.5 of appellee's General Exchange Tariff limiting liability to gross negligence or willful misconduct, being contrary to public policy, cannot be made part of the contract.

### G.2 LIMITATION

■ The limitation of liability contained in paragraph G.2 of appellee's General Exchange Tariff is of a different sort. Public policy is not involved. An agreement to hold one blameless or harmless for damages resulting from his negligence or other conduct "may be enforced if it is not contrary to public policy." *Brittain v. Booth*, Wyo., 601 P.2d 532, 535 (1979). This general rule has its qualifications.

"* * * [T]he law does not look with favor on provisions which relieve one from liability for his own fault or wrong. It is a well-settled general doctrine that the law will not sustain a covenant of immunity which protects against fraud or relieves one of a duty imposed by law for the public benefit. It has been held that clauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into; this is especially true where the contract involves services of a public or semipublic nature, but has also been applied in some controversies involving private contracts, particularly where, as in the case of a public or semipublic contract, the private contract is the

only means one of the parties has of filling an important need. * * *" 17 Am.Jur.2d Contracts, § 188, p. 557.

■ Scrutinizing paragraph G.2 of appellee's General Exchange Tariff, supra, with these qualifications in mind, we note that it limits damages to a specified credit allowance "when service is *interrupted* for a period of at least 24 hours" (emphasis added). Inasmuch as the claim here is not one for *interruption* of services but is for damages resulting from failure to begin the designated service, paragraph G.2 is not applicable. We also note that paragraph G.1 of appellee's General Exchange Tariff provides:

"1. *In view of the fact that the customer has exclusive control of his communications over the facilities furnished him by the Telephone Company*, and of the other uses for which facilities may be furnished him by the Telephone Company, *and because of unavoidability of errors incident to the services and to the use of such facilities* of the Telephone Company, the services and facilities furnished by the Telephone Company are subject to the terms, conditions and limitations specified in Paragraphs 2. through 7. following." (Emphasis added.)

■ The emphasized portion of this paragraph anticipates control and use by the customer before the "terms, conditions and limitations" specified in the next six paragraphs apply. In this case, the appellants did not have such control or use when the alleged damages were sustained.[2]

■ Accordingly, the limitation to a specified credit allowance is not applicable to the facts of this case; and appellee cannot be said, as a matter of law, to be entitled to a summary judgment because of such limitation. Construction and interpretation of an unambiguous contract is done by the court as a matter of law. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980); and *Joslyn v. Professional Realty*, Wyo., 622 P.2d 1369 (1981).

---

**2.** Such is equally applicable to the contractual limitation of liability to "gross negligence or willful misconduct" addressed in the next preceding section of this opinion.

## RE SPECIALLY CONCURRING OPINION

█ The specially concurring opinion questions the propriety of the negligence count in this case. The summary judgment, in effect, determined that both the contract and the negligence claim were subject to the G.2 limitation for damages and there were none, wherefore the only basis for recovery would be for gross negligence pursuant to the G.5 limitation. In their negligence count, appellants contend that there is a breach of duty imposed by law on appellee by virtue of the obligations imposed on it as a public utility to provide service. There are certain classes of contracts which create a relation out of which certain duties arise as implied by law independently of the express term of the contract. If the negligent breach of contract is also a breach of such duty, the remedy is ex contractu and ex delicto. *Cline v. Sawyer*, Wyo., 600 P.2d 725 (1979); *Mosby v. Manhattan Oil Co.*, 52 F.2d 364 (8th Cir. 1931), 77 A.L.R. 1099, cert. denied 284 U.S. 677, 52 S.Ct. 131, 76 L.Ed. 572 (1931); *Sugai v. General Motors Corporation*, 130 F.Supp. 101 (D.C.Idaho 1955). Such is the situation in this case. Of course, a double recovery is not allowed. *Reynolds v. Tice*, Wyo., 595 P.2d 1318 (1979).

Additionally, the contract terms themselves require a determination of negligence in order to ascertain liability. Section G.5 of appellee's General Exchange Tariff, supra, became a part of the contract between the parties by express agreement and law. It created negligence as a measure of fault. Although it referred to such as "gross negligence," the state's policy as enunciated in the comparative negligence statute makes percentages of negligence as the proper consideration rather than general categories such as gross negligence. *Danculovich v. Brown*, supra. This point was conceded by appellee in one of its briefs filed with the trial court. The pleadings formulated a negligence issue. The trial was on a negligence issue.

█ Negligence is an inseparable part of the contract terms. It is recognized in the contract as a basis of liability. It must be adjudicated.

Reversed and remanded with direction to deny appellee's motion for summary judgment and for further proceedings in accordance therewith.

THOMAS, Justice, specially concurring, with whom ROSE, Chief Justice, joins.

It is only because I reach the same result that this opinion can be denominated a special concurring opinion. My disagreement with the rationale propounded in the majority opinion is so sharp that in those respects I am dissenting from the views of the majority. Among the responsibilities of an appellate court is the obligation to lend some modicum of rationality to the law whenever possible. It is possible to do that in this instance, but the majority opinion does not do it. The assumption that an ex delicto remedy invokes the general law of negligence in tort is fallacious.

While the simile may not be apt, it makes about as much sense to call this action a negligence action instead of a contract action as it does to call the night the day. Obviously one cannot make the night into day simply by calling it the day. Furthermore, there are some rather obvious dangers in the assumption that one has made night into day by calling the night the day. This case is an action on a contract; it is solvable by the application of contract principles; and that is the way that it should be resolved.

The Supreme Court of Washington articulated the test for determining whether the claim sounds in tort or contract *Yeager v. Dunnavan*, 26 Wash.2d 559, 174 P.2d 755, 757 (1946), as follows:

"'"* * * When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, *but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty im-*

posed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself, and in such case allegations of the latter are considered mere inducement, showing the relationship which furnishes the right of action for the tort, but not the basis of recovery for it, and in such cases the remedy is an action ex delicto." ' [Citation.]"

Similar statements of the test have been announced in other jurisdictions. E.g., *Amphitheater Public Schools v. Eastman*, 117 Ariz. 599, 574 P.2d 47 (1977); *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976); *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971); *Quitmeyer v. Theroux*, 144 Mont. 302, 395 P.2d 965 (1964).

In California, the rule has been stated as follows:

" * * * [If] the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, but if it arises from a breach of duty growing out of the contract it is ex delicto." *Tameny v. Atlantic Richfield Company*, 164 Cal.Rptr. 839, 27 Cal.3d 167, 610 P.2d 1330, 1334, 9 A.L.R. 4th 314 (1980).

In the instant case, the gravaman of the action is the failure to provide services and facilities according to the contract, and the action is one ex contracto not ex delicto.

The paramount fallacy in the majority opinion is the invocation of the comparative negligence statute to establish the public policy which then becomes the fulcrum for a lever that abrogates the provisions of the General Exchange Tariff. This is indeed a strange way for this court to appropriate the functions of the executive branch of government acting through the Public Service Commission and that rationale probably should be renounced for that reason alone. The essence of my objection, however, is found in the provisions of § 1–1–109, W.S.1977, which reads in pertinent part as follows:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative *to recover damages for negligence resulting in death or in injury to person or property,* * * * *" (Emphasis added.)

There being no logical way that this action can be regarded as an action "to recover damages for negligence resulting in death or in injury to person or property," the provisions of the comparative negligence statute have no relevance to the resolution of the problem that this case presents.

I agree that the action of the district court in granting a partial summary judgment must be reversed, but only because, under applicable principles of contract law, the case was not ripe for that disposition. We have heretofore articulated the fundamental propositions of the law of contracts that pertain in this instance. We begin with the duty of this court in a case requiring the interpretation of a contract to give effect to the intention of the parties as expressed by the language that they employ. *McCartney v. Malm*, Wyo., 627 P.2d 1014 (1981); *Quin Blair Enterprises, Inc. v. Julien Construction Company*, Wyo., 597 P.2d 945 (1979). In attempting to discern the intention of the parties from the language of their contract, we must look at the instrument as a whole and afford meaning to all the language used, if that is possible, and a reasonable construction can thereby be achieved. *Sunburst Exploration, Inc. v. Jensen*, Wyo., 635 P.2d 822 (1981); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980); *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977). This court will attempt to give meaning and effect to each and every provision or term in the instrument, because it is presumed that each provision in the contract is incorporated for a purpose. *Shepard v. Top Hat Land & Cattle Co.*, supra, at 732; *Rossi v. Percifield*, Wyo., 527 P.2d 819 (1974). Provisions in the contract which apparently are in conflict must be reconciled, if a reconciliation can be accomplished by any reasonable interpretation, before the court will adopt a

construction that would nullify any provision of the contract. *Shepard v. Top Hat Land & Cattle Co.*, supra, at 732; *Covey v. Covey's Little America*, Wyo., 378 P.2d 506 (1963); *Wyoming Irr. Co. v. Yarnell*, 31 Wyo. 120, 223 P. 332 (1924).

The contract which is before the court here requires the telephone company to install certain telephone equipment and provide private branch-exchange service to the appellant no later than December 14, 1979. The contract provided for the private branch-exchange equipment to be furnished for the initial contract period of 60 months beginning the day following the installation of the equipment. Furthermore, the telephone company agreed to provide such service "subject to the obligations and regulations of the company's general exchange tariff and the terms of this letter." When extraneous documents, such as the General Exchange Tariff, are referred to in the body of a written instrument, such documents become part and parcel of the entire agreement just as if fully set forth in the written instrument signed by the parties. *Kilbourne-Park Corporation v. Buckingham*, Wyo., 404 P.2d 244 (1965); 17 Am. Jur.2d Contracts § 263 (1964).

When the provisions of the General Exchange Tariff are read in the light of other provisions of this contract, an inconsistency is manifested. The telephone company agrees to install equipment and provide service for the appellant, but insists that it was the intention of the parties that no liability for failure to install equipment or provide service would attach in the absence of gross negligence or willful misconduct. At the same time, however, paragraph G.1 of the General Exchange Tariff provided as follows:

> "In view of the fact that the customer has exclusive control of his communications over the facilities furnished him by the Telephone Company, and of the other uses for which facilities may be furnished him by the Telephone Company, and because of unavoidability of errors incident to the services and to the use of such facilities of the Telephone Company, the services and facilities furnished by the Telephone Company are subject to the terms, conditions and limitations specified in Paragraphs 2. through 7. following."

Paragraphs G.2 and G.5 upon which the appellee relies are to be construed and applied in the light of this language.

Paragraph G.1 assumes that service has been commenced when it speaks of control and use by the customer, the unavoidability of errors incident to the services, and to the use of facilities furnished by the telephone company. In this instance the appellant had no opportunity to assume control or use, because the breach by the telephone company prevented that. No facilities were furnished. The district court in such circumstances might have concluded as a matter of law that the General Exchange Tariff provisions were not applicable to the facts presented by the record. If the applicability could not be decided as a matter of law, that became a question of fact to be submitted to the jury, in which event any summary judgment would be inappropriate.

If these provisions of the General Exchange Tariff are found to be applicable, the contract before the court is ambiguous. In *McCartney v. Malm*, supra, at p. 1019, we said that an ambiguous contract is "an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." See also *Bulis v. Wells*, Wyo., 565 P.2d 487 (1977). Here, both obscurity and indefiniteness can be identified. Contractual ambiguity is a question of law which this court is free to determine without deference to the opinion of the trial court. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, supra, at 465. We have held that summary judgment is inappropriate in cases where the contract to be construed is ambiguous or unclear in its meaning. *Sunburst Exploration Company, Inc. v. Jensen*, supra, at p. 825; *Goodwin v. Upper Crust of Wyoming, Inc.*, Wyo., 624 P.2d 1192 (1981); *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y-Tex Corporation*, Wyo., 590 P.2d 1306 (1979). The justification for that rule is that the ambiguity

makes the intent of the parties a question of material fact for the court or jury to resolve.

I would reverse the judgment of the trial court and remand the case with the direction that it is to be tried as a contract action. The trial court first should consider whether the provisions of the General Exchange Tariff are applicable as a matter of law. If that question is not disposed of as a matter of law, the applicability of the provisions of the General Exchange Tariff must be resolved as a question of fact. The jury first should decide whether as a matter of the general intent of the parties the provisions of the General Exchange Tariff, which the appellee relies upon, were included as a part of the contract of the parties. If the jury were to decide that question affirmatively, it then should determine whether the parties intended those provisions to apply in an instance such as this in which no services or facilities actually were furnished. In any event, the trial court should be instructed to eschew the application of the comparative negligence statute.