341 S.E.2d 414

**CHAMBERLAINE & FLOWERS, INC.**

**v.**

**SMITH CONTRACTING, INC.**

**and**

**SMITH CONTRACTING, INC.**

**v.**

**USF & G CO.**

**No. 16773.**

Supreme Court of Appeals of West Virginia.

March 12, 1986.

---

**40**

Larry O. Ford, Jones, Williams, West & Jones, Clarksburg, for appellant Smith Contracting.

Boyd L. Warner, Berry, Waters, Warner & Harris, Clarksburg, for appellee USF & G Co.

BROTHERTON, Justice:

This is a consolidated action involving Chamberlaine & Flowers, Inc., an insurance agent, which is seeking to recover from Smith Contracting, Inc. $42,000.00 in unpaid insurance premiums. Smith Contracting, in a counterclaim, alleges that Chamberlaine & Flowers is liable to it for either having negligently adjusted a claim or having sold to Smith Contracting a policy of insurance which did not afford Smith Contracting the coverages which it sought. Smith Contracting also brought a second action against United States Fidelity & Guaranty Company, (USF & G) for wrongfully refusing to pay a claim by Smith Contracting. USF & G moved for summary judgment, claiming that the action

was barred by a contract provision limiting the right to sue to one year after discovery by the insured of the occurrence which gives rise to the claim. By order dated April 16, 1985, the Circuit Court of Harrison County granted USF & G's motion for summary judgment, from which order Smith Contracting appeals.

Smith Contracting had utilized Chamberlaine & Flowers for a number of years as its insurance agent and had purchased a number of different types of insurance policies from various companies through Chamberlaine & Flowers. One of the policies purchased by Smith Contracting was an inland-marine policy issued by USF & G which covered, among other items, a certain Caterpillar DG–9 tractor.[1] On August 24, 1982, while the Caterpillar was being used in an earth-moving operation in Harrison County, it broke through an abandoned mine shaft and became mired in mud. For various reasons, it was almost a month before the Caterpillar could be removed. After its removal, inspection showed that it had sustained major damage due to rust.

Smith Contracting filed a notice of proof of loss with USF & G. On May 5, 1983, the insurer, by mail, notified the insured that it denied coverage under the policy for the alleged loss because it was not "covered under the perils insured under your policy...." On August 16, 1984, a year and three months after USF & G denied coverage, Smith Contracting instituted this action against USF & G, alleging actions in contract, negligence and the tort of outrage.

## I.

Smith Contracting's contract claim against USF & G is barred by a provision in the policy limiting the time to file suit to one year after the discovery by the insured of the occurrence which gives rise to the claim. The applicable policy provision provides:

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless, the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

Such a provision allowing for a one-year limitation is not unlawful. In fact, such a provision in a marine policy is specifically allowed by W.Va.Code § 33–6–14 (1982).

The appellant argues that since the Caterpillar was covered by a personal property floater to the marine policy, and the floater was very similar to casualty insurance, we should treat the rider as casualty insurance and apply the casualty insurance limitations period.[2] We disagree. West Virginia Code § 33–1–10(d)(1) (1982), which defines marine policies, notes that marine insurance includes "all personal property floater risks." "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). Because the statute unambiguously provides that a marine policy includes personal property floaters, it would be incorrect to treat the personal property floater as casualty insurance. The trial court, therefore, was correct in holding that the appellant's contract claim was barred by the provision in the marine policy limiting the period in which to sue to one year after the discovery of the claim.

---

1. An inland-marine policy is often used to insure pieces of heavy equipment because the frequent transportation from different work sites necessitates some sort of transportation insurance. Often, as in this case, a personal property floater is used in connection with the marine insurance to provide protection for perils other than those involved in transportation.

2. The limitations period on casualty insurance is two years, *see* W.Va.Code § 33–6–14 (1982), thus allowing the appellant to maintain its contract action.

## II.

In addition to the contract claim, the appellant also asserts a negligence claim. In the second count of its complaint the appellant alleges that, "(D)efendant USF & G negligently adjusted plaintiff's claim and negligently failed to pay to plaintiff the amount to which it was entitled by virtue of the policy of insurance which had been issued to plaintiff by defendant." The appellant, however, is dressing a contract claim in a tort's clothing.

■ The distinction between tort and contract liability, as between parties to a contract, can be difficult to define. The key distinction is whether the act complained of was one of misfeasance or nonfeasance. Misfeasance, or negligent affirmative conduct, in performing a contract generally subjects the actor to tort liability in addition to contract liability for physical harm to persons and tangible things. *See Taylor v. Herbold*, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971); Prosser & Keeton, *Torts*, p. 656 (5th ed. 1984). On the other hand, there is generally no tort liability for failing to do what one has contracted to do, unless there is some duty to act apart from the contract.[3] *See Morgan v. South Cent. Bell Tel. Co.*, 466 So.2d 107, 114 (Ala.1985); Prosser & Keeton, *Torts* 657 (5th ed. 1984). USF & G's refusal to pay on the insurance policy was not a negligent act, but an affirmative refusal to act.[4] Such a refusal to act constitutes nonfeasance. Because there is no tort liability for USF & G's nonfeasance in this case, the trial court was correct in dismissing the negligence count of the appellant's complaint.

## III.

■ The third part of the appellant's complaint alleges the tort of outrage. This relatively new tort action was first recog-

nized in this State in syl. pt. 6 of *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982), as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." As the above definition implies, the tort of outrage is not a panacea for all conduct which might be classified as outrageous. The tort only applies where the outrageous conduct causes severe emotional distress to a person. The appellant in this case is Smith Contracting, a corporation. It is difficult for this Court to conceive of how conduct, no matter how outrageous, could inflict severe emotional distress on a corporation. We, therefore, hold that a corporation cannot recover for the tort of outrage or infliction of severe emotional distress. The trial court properly dismissed this count of the appellant's complaint.

## IV.

■ While it is true that the trial court properly dismissed all three counts of the plaintiff's complaint, its award of summary judgment may have been improper. Rule 56(c) of the West Virginia Rules of Civil Procedure allows for summary judgment only when it is shown that, "the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances. . . ." *West v. National Mines Corp.*, 168 W.Va. 578, 285 S.E.2d 670, 678 (1981). In determining a Rule 56 motion, the court is not limited to the issues of law presented by the pleadings. Regardless of the limits of the complaint as filed, it is the duty of the court, in ruling on a motion for summary judgment, to look to the facts

---

3. There are some situations where the law imposes a duty of affirmative action apart from promises made. In a few situations, the failure to perform a contract may amount to a tort. For example, those who serve a common calling often have a duty to contract. *See, e.g., Beck & Gregg Hardware Co. v. Assoc. Transport*, 210 Ga. 545, 81 S.E.2d 515 (1954) (common carriers); *Jackson v. Va. Hot Springs Co.*, 213 F. 969 (4th

Cir.1914) (innkeepers); *Oklahoma Natural Gas Co. v. Graham*, 188 Ok. 521, 111 P.2d 173 (1941) (public utilities).

4. We make no decision as to whether USF & G's conduct may have amounted to a bad faith refusal to pay, because the issue was not presented to us.

and consider other possible causes of action to see whether there are any grounds for an amended complaint as though it were already amended to conform.[5]  *See, e.g., Fulmer v. United States*, 83 F.Supp. 137, 150 (N.D.Ala.1949).

 It is apparent from the lower court's order that it limited its inquiry to the theory of law presented by the plaintiff in its complaint.  On remand, we instruct the lower court to consider other possible causes of action before deciding the summary judgment motion.[6]

Because an award of summary judgment may not have been appropriate in this case, we remand the case to the trial court with instructions.

Remanded with instructions.

---

**5.**  Nevertheless, the plaintiff cannot expect the judge to act as the plaintiff's law clerk.

**6.**  The only other theory possibly permitting recovery of which this Court is aware is that of bad faith refusal to pay on an insurance policy. *See, e.g., Fletcher v. Western Nat. Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).  We make no decision, however, as to the merits of this theory, but allow the lower court to determine originally whether or not summary judgment would still be appropriate.